VANDERVORT and another, Respondents, vs. INDUSTRIAL COMMISSION OF WISCONSIN and another, Appellants.

*December 12, 1930—January 13, 1931.*

For the appellants there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, attorneys for the Industrial Commission, and *Donovan & Gleiss* of Tomah, attorneys for James A. Bolton, and oral argument by *Mr. Levitan* and *Mr. Timothy P. Donovan.*

For the respondents there was a brief by *William R. McCaul* of Tomah, attorney, and *Grady, Farnsworth & Walker* of Portage of counsel, and oral argument by *Mr. Daniel H. Grady* and *Mr. McCaul.*

OWEN, J. The plaintiffs, O. D. Y. Vandervort and Louis Heinz, are both farmers by occupation. Shortly prior to August 12, 1927, they entered into a contract with one Mrs. Acker to move her house for a consideration of $500. James A. Bolton, one of the defendants, was employed by them to assist in moving the house. A bridge over which the house was being moved, on August 12, 1927, fell into the river, as a result of which the defendant Bolton received physical injuries. Upon his application the Industrial Commission made an award requiring the plaintiffs, O. D. Y. Vandervort and Louis Heinz, to pay to James A. Bolton the sum of $5,039.10. The trial court vacated the award because the employment in which Bolton received his injuries was not in the course of a trade, business, profession, or occupation of his employers, Vandervort and Heinz.

It is conceded that the usual occupation of the plaintiffs is that of farming, and that the moving of the house in which they were engaged at the time, and by reason of which, Bolton received his injuries was but a casual undertaking on their part. They were not engaged in the house-moving business and had none of the equipment or appliances necessary for the conduct of such a business. The question here presented is whether Bolton, while in their

employ, in the conduct of this undertaking, was under the protection and was entitled to the benefits of the workmen's compensation act.

We approach the consideration of this question in full appreciation of the rule prevailing in this court that the workmen's compensation act should be liberally construed in favor of including all service that can in any sense be said to reasonably come within it. *Kimberly-Clark Co. v. Industrial Comm.* 187 Wis. 53, 203 N. W. 737. However, in construing this act the legislative purpose cannot be lost sight of, and it must not be forgotten that the conferring of benefits upon employees involves the imposition of burdens upon employers. Burdens not contemplated by the act should no more be imposed upon employers than the benefits conferred by the act should be denied to employees, by construction. It is apparent from a casual reading of the act that there was no legislative intent to impose upon all employers of labor the burdens prescribed by the act. The act expressly excepts from its provisions farm laborers and domestic servants, and also excludes from its provisions all employers who do not have three or more employees in their employ unless they affirmatively come under the act. It also excludes from the terms of the act "any person whose employment is not in the course of a trade, business, profession, or occupation of his employer." Sec. 102.07 (4), Stats.

Since its original enactment the statute has been somewhat broadened to bring within its protection employees who were originally excluded. As originally enacted, this provision read: "but not including any person whose employment is but casual or is not in the usual course of the trade, business, profession, or occupation of his employer." The words "is but casual or" were stricken out by ch. 624, Laws of 1917, so that thereafter an employee was under the act even though his employment was but casual, if it was in the usual course of a trade, business, profession, or occupa-

tion of his employer. Thus was revealed a legislative intent to enlarge the class of employees who were within the protection of the act. By ch. 453, Laws of 1929, this provision was further amended so as to exclude "any person whose employment is not in the course of a trade; business, profession, or occupation of his employer." This perhaps revealed a further legislative intent to enlarge the class of employees within the protection of the act, but whether very much was accomplished along that line may be doubted. The word "usual" was stricken out, so that now it is not necessary that the employment be within the usual course of a trade, business, profession, or occupation of the employer. It is sufficient if the employment be in the course, whether or not it be the usual course, of a trade, business, profession, or occupation of the employer. The article "a" was substituted for the article "the" before the words "trade, business, profession, or occupation of his employer," thus recognizing that the employer might have more than one trade, business, profession, or occupation. Such was the prior ruling of this court. *Pierce v. Industrial Comm.* 179 Wis. 189, 190 N. W. 80. It will thus be noted that though this provision of the act has been under recent legislative scrutiny, it still excepts from the provisions of the act any employee whose employment is not in the course of a trade, business, profession, or occupation of his employer.

There can be no faithful construction of this section of the statutes which fails to give force and effect to this expression. They are manifestly words of limitation, and were intended to restrict the benefits of the act to those employees only who were engaged in the course of a business of the employer. Likewise there was a clear legislative intent to withhold the burdens of the act from employers where the employment was not in the course of the employer's business. This apparent legislative intent is in keeping with the agitation which gave rise to the legislation. It was recog-

nized that industry gave rise to inevitable accidents, and that the cost of the product of industry included not only material, capital, and labor entering into its production, but also human life and human suffering resulting from such inevitable accidents. Under the old system the element of human life and human suffering entering into the manufactured product was borne to a shocking extent by the employee. It was thought that this element entering into the production of manufactured articles should be added to the cost and be borne by the industry or by the public instead of by the employee. It was not thought that every employer of labor should be subject to the burdens imposed by the act. Farmers were expressly excluded, domestic servants were not included, and employers having less than three employees were not brought under the provisions of the act.

Furthermore, the provision of the act (sec. 102.28) requiring the employer under the act to carry compensation insurance under a minimum penalty of a fine of ten dollars and a maximum penalty of not more than six months in jail for each day he shall fail to carry such insurance, indicates that the employment contemplated by the act should be of some substantial continuity and regularity. *Kelley v. Haylock,* 163 Wis. 326, 157 N. W. 1094. It could not have been intended to require one having a piano to move, to take out compensation insurance before employing men to assist him in the undertaking. The provision that the term "employee" as used in the act shall not include "any person whose employment is not in the course of a trade, business, profession, or occupation of his employer" is in complete harmony with this legislative scheme.

Most if not all compensation acts of this country, as well as the compensation act of England, which formed in large measure the pattern for our act, contain the same or similar language which excludes from the benefits of the act employees whose employment "is not in the course of a trade,

business, profession, or occupation of his employer." This provision has been construed by many courts of this country and has upon many occasions been construed by the courts of England. By all courts these words are held to be words of limitation which restrict the benefits of the act to employees who are employed in the course of a trade, business, profession, or occupation of their employer. What constitutes the trade, profession, or occupation of an employer has not given rise to much difficulty. However, the meaning of the word "business" has been the subject of much discussion; it being contended in support of the claim for compensation that the business of an employer is any undertaking in which he may happen to be presently engaged. In all of the cases except one that contention has been negatived. In *Blyth v. Sewell,* 126 Law Times, 552, 2 Butterworth's W. C. C. 476, a *nisi prius* judge held that an employer's business was anything that engaged his time and attention as master in relation to employment, and said that "if a lawyer seeks relaxation on the golf links or exhilaration with his gun, or if a merchant . . . takes a country seat for pleasure and employs a man to drive cattle to it, such lawyer or merchant would be busied about one of those respective matters, and the employment of a caddy, or of a beater, or of a drover . . . would be for the purposes of that employer's business—the business in hand." We have not found this view expressed, however, by any appellate court. They all express the view that the term "business" as used in this provision has the same meaning as the words "trade" or "profession," and that it does not include any and all casual, isolated, and desultory activities which may be undertaken from time to time. It has been given its popular conception and construed to mean just as Webster defines it: "some particular occupation or employment habitually engaged in for livelihood or gain." In speaking of the meaning of the word as used in the workmen's compensation act of that state, the Minne-

sota court said: "It must have the same general significance with respect to the work or calling of the employer as the words 'trade, profession, or occupation,' hence must refer to the employer's ordinary vocation and not to every occasional, incidental, or insignificant work he may have to do. When we speak of a person's trade or profession we generally refer to that branch of the world's activities wherein he expends his usual every-day efforts to gain a livelihood." *State ex rel. Lennon v. District Court,* 138 Minn. 103, at p. 106 (164 N. W. 366). The Iowa court said: "The purpose of the proviso under consideration was to narrow or to withdraw the application of the broader terms of the statute from those 'casual' employments which are more or less incidental to the life of everybody." *Pfister v. Doon Electric Co.* 199 Iowa, 548, 202 N. W. 371; and in *Kaplan v. Gaskill,* 108 Neb. 455, 187 N. W. 943, the court said: "Those terms imply a continuous or habitual course of dealing in certain transactions and a dealing to a sufficient extent as to so employ work and labor and service in the conducting of it that it can be said to be a regular occupation or business." To the same effect are *Hill v. Begg,* 2 K. B. 802; 1 Butterworth's W. C. C. 320; *Rennie v. Reid,* 1 Butterworth's W. C. C. 324; *McCarthy v. Norcott,* 2 Butterworth's W. C. C. 279; 43 Irish L. T. 17; *Brine v. May, Ellis, Grace & Co.* 6 Butterworth's W. C. C. 134. We have twice given consideration to this phrase. *Charles Ploetz & Co. v. Industrial Comm.* 194 Wis. 603, 217 N. W. 325; *Sturman v. Industrial Comm., ante,* p. 190, 232 N. W. 864, 234 N. W. 494, the result reached being in harmony with the universal holding upon the subject.

In this case the employers were farmers. That was their occupation, their business. In this single instance they stepped aside from their regular business to move this house. That was a single, isolated undertaking. They had never done such work before, and the evidence negatives any in-

tention on their part to continue in that field of endeavor. It seems plain that their indulgence in this casual and isolated undertaking did not bring them within the terms of the workmen's compensation act. The law did not require them to provide themselves with workmen's compensation insurance before starting on that rather inconsequential job. They were permitted to suffer the penalties of common-law liability towards employees whom they might find it necessary to bring to their assistance if they saw fit. This single job did not constitute their business. It did not constitute a work in which they were regularly and continuously engaged. The employment in which Bolton received his injuries, therefore, was not employment in the course of a trade, business, profession, or occupation of his employer, and he was not entitled to compensation under the compensation act. The judgment of the circuit court vacating the award of the Industrial Commission must be affirmed.

*By the Court.*—Judgment affirmed.