(No. 24007.—

BEN SNEEDEN, Receiver, Plaintiff in Error, *vs.* THE INDUS-
TRIAL COMMISSION *et al.*—(RICHARD GRASTY, Defend-
ant in Error.)

*Opinion filed June 11, 1937—Rehearing denied October 6, 1937.*

FERRELL & HAY, for plaintiff in error.

STONE & FOWLER, for defendant in error.

Mr. JUSTICE HERRICK delivered the opinion of the court:

This cause is here on writ of error granted by this court to review a judgment of the circuit court of Williamson county confirming an award granted by the Industrial Commission under the Workmen's Compensation act, in favor of the defendant in error, Richard Grasty, herein called the employee.

On December 31, 1932, the Comptroller of the Currency appointed Ben Sneeden as receiver of the First National Bank of Herrin. The receiver immediately took possession of all the assets of the bank. Among these were several tracts of improved real estate. They consisted of the two-story bank building, the first floor of which was occupied by the banking room and a store room and the second floor by offices; a business building, wherein was conducted a dyeing and cleaning enterprise, the post-office building, sev-

eral dwellings and some farm lands, and a store building known as the Ellis building, where the employee was injured. At the time of the closing of the bank, most of the properties were occupied by tenants. The receiver, in the course of his duties, collected the rents accruing. These were paid into the assets of the defunct bank and constituted a portion of the fund out of which was paid the current expenses of receivership and dividends to the bank's creditors. Such repairs were made on the several buildings as the receiver deemed necessary, different repairs having been made on the Ellis property by him. The bank owned a note secured by a mortgage on the Ellis property. It was a frame, one-story store building, with a projecting porch facing the business street on which it was located. Under the mortgage provisions, the receiver took possession of these premises and collected the accrued rents, from time to time, from a tenant who had leased the premises from the bank prior to the time of the receivership, the tenant continuing under the receiver. The last rents were collected on March 21, 1934. About this date the tenant vacated the property. Shortly prior to May 17, 1934, the fire marshal's office served a written notice on the receiver that the condition of the building was very bad, and to make certain repairs and replacements thereon. While there is a dispute in the evidence as to just what was said relative to the hiring of Grasty, the evidence tends to prove, and apparently the commission found, that the receiver went to Bob Stotlar, who operated a lumber yard near the Ellis property, and asked him to get a man to tear down the porch on the front of the building. The receiver's purpose in removing the porch was to comply, in part, with the fire marshal's notice. The result of the conference was that Stotlar, for the receiver, employed Grasty to take down the porch on the basis of two hours' time at seventy-five cents per hour. The material was to be stored in the building. On that evening Grasty started the work. During the

course of his labor he was struck in the left eye by a wooden splinter, the injury resulting in industrial blindness. The Industrial Commission awarded him the amount of his physician's bill, $47.50, compensation at $11.54 per week for five and four-sevenths weeks for temporary total incapacity, and a like weekly sum for 120 weeks for industrial blindness.

The major issue for decision is whether a receiver of a national bank, who, in the course of his receivership, is maintaining a building and has an employee who receives an injury arising out of and in the course of his employment while working on such building, can be held liable for compensation under the Workmen's Compensation act of this State.

The receiver's position on that issue may be summarized as follows: (1) A receiver of a national bank is a Federal officer, commissioned by the Comptroller of the Currency, and therefore not amenable to a local law; (2) the Workmen's Compensation law of this State interferes with and frustrates the powers and duties of the receiver, as limited by the National Banking act; (3) a national bank receiver has no power under the National Banking act, in the liquidation of the bank, to engage in business, as engaging in business is defined by such Workmen's Compensation act; (4) by reason of the foregoing, the Industrial Commission did not have jurisdiction of the receiver and was without authority to grant the award in question.

The Federal Code provides that all national banking associations shall, for the purpose of actions, real, personal or mixed, and all suits in equity by or against them, be deemed citizens of the State in which such banks are respectively located, (U. S. C. A. Judicial Code and Judiciary, title 28, sec. 41, subd. 16, p. 609.) By the act of 1882, (subd. 16, *supra*,) a national bank cannot remove a cause wherein it is defendant in a suit brought in a State court merely because the bank is incorporated under the Federal

statute. (*Leather Manfrs. Nat. Bank* v. *Cooper,* 128 U. S. 778, 30 L. ed. 816; *Whittemore* v. *Amoskeag Nat. Bank,* 134 U. S. 527, 33 L. ed. 1002; *Ex parte Jones,* 164 U. S. 691, 41 L. ed. 601.) It follows that the bank, being a citizen of the State where it is located, must be subject to its laws in so far as they do not undertake to regulate its business as a bank. A bank continues to exist as a legal entity notwithstanding the appointment of a receiver therefor, (*First Nat. Bank of Bethel* v. *The Nat. Pahquioque Bank,* 14 Wall. 383, 20 L. ed. 840,) and so a receiver of a national bank is invested with all the rights of the creditors of the bank, as well as the rights of the corporation. (*Brown* v. *Schleier,* 114 U. S. 18, 48 L. ed. 857.) Obviously, if invested with the rights of the bank and its creditors, he must also be burdened with the responsibilities incurred in the due course of the administration of the bank's affairs, including the legal assumption by him of the citizenship of the bank for the purpose of suing and being sued.

Section 3 of the Illinois Workmen's Compensation act provides that the terms of the act shall apply automatically and without election, among others, to any body politic and to "all employers and all their employees, engaged in any department of the following enterprises or businesses which are declared to be extra-hazardous, namely: (1) The erection, maintaining, removing, remodeling, altering or demolishing of any structure, except as provided in subparagraph 8 of this section." (State Bar Stat. 1935, chap. 48, p. 1590.) Sub-paragraph 8 is the one which exempts farmers from the provisions of the act. Section 4 states: "The term 'employer' as used in this act shall be construed to be: * * * *Second:* Every person, firm, public or private corporation * * * who has any person in service or under any contract for hire, express or implied, oral or written, and who is engaged in any of the enterprises or businesses enumerated in section three (3) of this act," etc.

There is no question in the record but that the bank, at the time it closed its doors, had theretofore lawfully acquired the real estate. The receiver is the representative of the bank. The assets in his custody are subject to all claims and defenses that might have been made against the bank. Such notice or knowledge which the bank may have had which affect the character of the assets are imputed to him. (*Scott* v. *Armstrong, Receiver,* 146 U. S. 499, 36 L. ed. 1059.) Under the powers granted to it by section 29, title 12, Banks and Banking, (U. S. C. A. p. 95,) it was the receiver's duty to reduce the bank's assets to cash and, by the provisions of section 192, title 12, Banks and Banking, (U. S. C. A. p. 399,) under the order of the Comptroller, to distribute the proceeds to its creditors. For the purpose of converting the assets into current funds and accomplishing such distribution the receiver was the owner of the bank's assets. The renting and maintaining of its real estate on which there were structures was a part of his implied duty pending the sale of such premises. A material portion of his. time as such receiver necessarily was devoted to maintaining and caring for such real property. This court has consistently held that the owner of a building, who rents his building for profit or hire, is engaged in the business of maintaining a structure within the purview of sub-section 1 of section 3 of the Workmen's Compensation act. (*Walsh* v. *Industrial Com.* 345 Ill. 366; *Rogalski* v. *Industrial Com.* 342 id. 37; *Jacobi* v. *Industrial Com.* 342 id. 210; *Storrs* v. *Industrial Com.* 285 id. 595; *Johnson* v. *Choate,* 284 id. 214.) This is the rule even though the owner may be chiefly engaged in another business, not classified as extra-hazardous. (*National Alliance* v. *Industrial Com.* 364 Ill. 249.) The work of demolishing the porch on the Ellis building was clearly within the terms of the act. It was dangerous and extra-hazardous. (*Davis* v. *Industrial Com.* 297 Ill. 29.) We are not impressed with the argument that the receiver, as such, is a

Federal officer, and therefore immune from liability for the injury received. The bank was a corporation organized for profit. Its major function was not as a governmental agency but was a banking business conducted for the financial gain of its stockholders. Its appearance in the governmental plan as a financial instrumentality of the Federal government was merely incidental to its main purpose, the carrying on of a business for its stockholders. In a limited sense its receiver was a Federal officer. However, the immunity from suit on the part of Federal officers extends only to such individuals as are strictly public officers, and who are an integral part of governmental agencies in the administration of governmental functions, and with no funds to pay damages for their acts, except those taken from the public treasury. 23 R. C. L. sec. 92, p. 84.

The proceeding here is not to recover damages for a tort, but for a liability imposed, by statute, for an injury received by an employee in the course of and arising out of his employment. The Workmen's Compensation statute, as to those employers coming within its terms, imposed a legal obligation to compensate financially for injuries to their workmen injured in the course of their employment. This statute reads into every contract of employment between such employers and employees this duty to compensate for injuries so received by the employee. *Keller* v. *Industrial Com.* 350 Ill. 390; *Haeney* v. *Carlin Const. Co.* 269 N. Y. 93, 199 N. E. 16. Affirmed, United States Supreme Court, 81 L. ed. 16.

The Workmen's Compensation act in no way attempts to regulate the banking business, as such, of a national bank. It in no way interferes with a bank in discharging its banking duties. No act of Congress attempts to relieve a national bank from the liability under the State legislation fixing liability for injuries to national bank employees. Unless the Workmen's Compensation act undertakes to regulate, in a material way, the corporate functions of a na-

tional bank, it is not obnoxious to the Federal statute under which the bank was organized and lived its corporate life. (*Davis* v. *Elmira Savings Bank,* 161 U. S. 275, 40 L. ed. 700; *Merchants Nat. Bank* v. *Ford,* 99 S. W. (Ky.) 260.) This rule of law applies to a national bank after the appointment of a receiver. *First Nat. Bank of Bethel* v. *Nat. Pahquioque Bank, supra.*

A State statute of Iowa requiring a national bank to pay a reward for finding lost goods was held not invalid as interfering with or impairing the efficiency of such bank. (*Flood* v. *City Nat. Bank of Clinton,* 220 Iowa, 935, 263 N. W. 321. *Certiorari* denied, 298 U. S. 666, 80 L. ed. 1390.) The Workmen's Compensation act of California was held to apply to national banks in *First Nat. Bank* v. *Industrial Accident Com.* 2 Pac. (2d) 347, and an allowance of compensation to the injured employee sustained.

It is urged that there is no fund out of which to pay the award, that the assets of the bank in the receiver's hands are exclusively for the payment of the creditors, and that the employee is not a creditor of the bank. The Federal statute provides, "all expenses of any receivership shall be paid out of the assets of such association before distribution of the proceeds thereof." (U. S. C. A. Banks and Banking, title 12, sec. 196, p. 453.) In *McNulta* v. *Lockridge,* 137 Ill. 270, it was urged on the part of the receiver that there was no liability on his part for the torts of his employees in operating the railroad for which he was receiver. This court held he was not liable personally but in his official capacity, and that the damages for such tort should be paid out of the trust property committed to his control. That holding was sustained in *McNulta* v. *Lockridge,* 140 U. S. 237, 35 L. ed. 796.

The claim here is for an injury received by an employee. It is not founded on a tort but on an implied promise to pay for the injury, which the statute imposed on the receiver in the maintenance of the structure where the employee

was hurt. The contract of employment of the employee to demolish the porch, carried with it the further contract, made by the Workmen's Compensation act, to pay for any injury which the employee might sustain in the course of his employment. Compensation for injury is an expense of the liquidation of the bank. It is not a preference over the bank's creditors existing at the time it closed, any more than other expenses of the receivership. The award is payable as an expense of the receivership. *Bereath, Receiver,* v. *Sparks,* 51 Fed. (2d) 441; *McNulta* v. *Lockridge, supra.*

The case of *Jennings, Receiver* v. *United States Fidelity and Guaranty Co.* 294 U. S. 216, 79 L. ed. 869, cited by the receiver, is not in point on this issue. The issue there was the validity of an Indiana statute which provided that when a collecting bank failed, after having received the proceeds of a collection without payment or remittance of the proceeds, the assets of the bank should be impressed with a trust for the amount of such proceeds in favor of the owner of the item collected, and such owner given a preference upon such assets, irrespective of whether the proceeds of the collection could be traced and identified as a part of such assets, or had been intermingled with or converted into other assets of the failed bank. The statute was held to be in conflict with the Federal statute providing for an equal and ratable distribution of the assets of a national bank to the creditors of such bank. The cases of *Cook County Nat. Bank* v. *United States,* 107 U. S. 445, 27 L. ed. 537; *First Nat. Bank* v. *Missouri,* 263 U. S. 640, 68 L. ed. 486, and *First Nat. Bank* v. *California,* 262 U. S. 366, 67 L. ed. 1030, cited by the receiver, are similar in principle to the *Jennings case, supra,* and not decisive of the issue here. Nor does the fact that the payment of the award extends over a period of time beyond that in which the affairs of the bank may be wound up, strengthen the receiver's position. Doubtless he could, under the direc-

tion of the Comptroller of the Currency, withhold sufficient funds to meet the weekly payment, or he could have the amount commuted under section 9 of the Workmen's Compensation act.

Lastly, it is contended that the amount of the award is not sustained by the record. The award was based on the earning power of the employee at $1200 annually, grounded on a two-hundred-day year at six dollars per day. The proof showed that in that community, for the type of work the employee was doing at the time of the injury, the recognized wage return was seventy-five cents per hour, eight hours constituting a day's work. Grasty had not been steadily employed for some time prior to the accident. Paragraph (c), of section 10, of the Workmen's Compensation act, (State Bar Stat. 1935, p. 1596,) provides, if the injured person has not been engaged in the employment of the same employer for a full year immediately prior to the accident, the compensation shall be calculated according to the annual earnings which a person of the same class in the same employment and same location has earned during such period. Paragraph (e) provides for a minimum of two hundred days as to the employments in which it is not customary to operate throughout the working days of the year. These sections have been passed upon and sustained as a proper measure for the determination of the annual earnings of employees falling within their provisions. (Sinclair Refining Co. v. Industrial Com. 317 Ill. 541; Ruda v. Industrial Board, 283 id. 550; Stellwagen v. Industrial Com. 359 id. 557.) The case of Jacobi v. Industrial Com. 342 Ill. 210, cited by the receiver, is not of assistance to him on the issue here. That case involved a question of a partial permanent disability. There was no evidence in that record of the extent of the disability or the employee's annual earnings. Paragraph (d) of section 8, (State Bar Stat. 1935, p. 1594,) furnished the basis for the ascertainment of the amount of award for that

562

character of injury. That section requires proof of the average amount of wages earned before the accident and the average amount which the employee earns, or is able to earn, in some suitable employment subsequent to the accident.

In the case at bar the amount of the award is sustained by the evidence. The receiver was amenable to the provisions of the Workmen's Compensation act. That act does not interfere with nor impinge upon his duties as receiver. At the time the injury was received by the employee, the receiver was maintaining a structure within the terms of section 3 of the Workmen's Compensation act. The Industrial Commission had jurisdiction of the receiver, and of the cause presented by his employee, for the allowance of compensation.

The judgment of the circuit court was correct and is affirmed.

*Judgment affirmed.*