(No. 31422.—

IOWA-ILLINOIS GAS & ELECTRIC COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(KENNETH ROBISON, Defendant in Error.)

*Opinion filed November 27, 1950.*

ROBERT G. GRAHAM, of Moline, for plaintiff in error.

SIDNEY S. DEUTSCH, and GORDON E. WINDERS, both of Rock Island, for defendant in error.

Mr. Justice Gunn delivered the opinion of the court:

The respondent, Kenneth Robison, was injured February 28, 1947, by falling from a second-story window, and at the time was the employee of John Bondar, working upon windows in the office of Iowa-Illinois Gas & Electric Company, hereafter referred to as petitioner. He had been loaned by Forest Benford, his regular employer, to John Bondar. He filed the application against the petitioner, and Benford, and Bondar. A hearing was had, and the arbitrator held all three liable for compensation. The petitioner, alone, appealed to the Industrial Commission, where the arbitrator's decision was affirmed, and later confirmed by the circuit court of Rock Island County. The petitioner has been allowed a writ of error out of this court for a review of the case.

The facts disclose that Kenneth Robison was a window washer in the regular employ of Forest Benford. John Bondar, another window washer employer, had a contract to wash windows for petitioner at a fixed price per week. Getting behind in his work Bondar borrowed Robison from Benford to assist him, and took him to petitioner's building to help in washing windows. Bondar's contract covered only show windows on the ground floor and certain windows on the second floor, and on February 28, 1947, while washing a window on the second floor, the respondent fell to the street, and was injured.

There is no doubt but Robison was the employee of an independent contractor. Neither of Robison's employers in the window washing business carried compensation insurance, and the proceeding was therefore filed against the petitioner upon the theory that it was liable under section 31 of the Workmen's Compensation Act. (Ill. Rev. Stat. 1949, chap. 48, par. 168.) The circuit court held that the petitioner was engaged in the business of "maintaining a structure," and was also engaged in

"electrical work," and therefore comes within the provisions of section 31.

The facts which are claimed to show petitioner was engaged in "maintaining a structure," are as follows: Petitioner owns and leases buildings for the manufacture and sale of gas and electricity as a public utility. It has an office and retail building in Moline, Illinois, which it leases from the Deere estate. It does not occupy the entire building. The firm of DeVoe & Raynolds Corporation (herein referred to as DeVoe) also leases space in the Deere building. In 1942 petitioner subleased from DeVoe the basement portion of the premises occupied by it at a rental of $30 per month. In 1945 DeVoe notified petitioner that it would need the basement portion so leased for its own storage, and would terminate the sublease. However, an arrangement was made between petitioner and DeVoe whereby petitioner let DeVoe sublease a part of petitioner's space on the second floor for its storage, and petitioner was allowed to retain the basement. A charge of $12 per month was made DeVoe for the room subleased to it, thus reducing the net amount paid to DeVoe to $18 per month. The room subleased by petitioner constituted two per cent of the space on the second floor. These circumstances are claimed to put the petitioner in the business of "maintaining a structure," because it is receiving rental from a part of the property it uses in its utility business.

The other claim of liability to pay compensation for the injury sustained by respondent is that by reason of petitioner conducting a public utility it is in the "business of electrical work," as specified in subsection 2 of section 3 of the Workmen's Compensation Act. (Ill. Rev. Stat. 1949, chap. 48, par. 139.) The provisions of the pertinent statutes applicable to the present case are section 31, and subsections 1 and 2 of section 3 of the Workmen's Compensation Act. Section 31 provides:

"Anyone engaging in any business or enterprise referred to in sub-sections 1 and 2 of section 3 of this Act who undertakes to do any work enumerated therein shall be liable to pay compensation to his own immediate employees in accordance with the provisions of this Act, and in addition thereto if he directly or indirectly engages any contractor whether principal or sub-contractor to do any such work, he shall be liable to pay compensation to the employees of any such contractor or sub-contractor unless such contractor or sub-contractor shall be insured, in any company or association authorized under the laws of this State to insure the liability to pay compensation under this Act, or guaranteed his liability to pay such compensation." Ill. Rev. Stat. 1949, chap. 48, par. 168.

The sections to which section 31 refers are as follows:

"Sec. 3. The provisions of this Act hereinafter following shall apply automatically and without election to * * * all employers and all their employees, engaged in any department of the following enterprises or business which are declared to be extra hazardous, namely:

"1. The erection, maintaining, removing, remodeling, altering or demolishing of any structure * * *.

"2. Construction, excavating or electrical work * * *." Ill. Rev. Stat. 1949, chap. 48, par. 139.

There are certain exceptions to these provisions, not pertinent to the case.

In simple language, the statute first seems to provide that anyone who is engaged in the business of "maintaining a structure," and who undertakes to do such work through a contractor or subcontractor, shall be liable to pay compensation to the employees of any such contractor or subcontractor injured in the performance of the work, unless such contractor shall have provided insurance to pay compensation. The obvious and apparent reason for this statute is to prevent employers in these certain occupations

from having their work done by contractors without liability, when otherwise they would be liable to pay compensation if their employees performed it.

The first question that engages our attention is whether petitioner was in the "business" of "maintaining a structure," and this must be determined from general principles, since no reference is made to a statutory or controlling decision from this State.

The precise definition or limitation of the words "maintaining of any structure" has not, so far as we have ascertained, been decided. Reading of subsection 1 of section 3 of the act discloses it refers to a business or enterprise that is classified as extra-hazardous. Looking now at section 31, it also provides that anyone engaged in the business or enterprise referred to in subsections 1 and 2 of section 3 becomes liable to pay compensation under the specified conditions. Examination of both sections makes it clear beyond argument that they both require the party charged with liability to be in the *business* or *enterprise* of "maintaining structures." Of all of the words used in subsection 1 of section 3 the word "maintaining" has the least definite and extensive meaning, when applied to structures. The law requires it be a "business or enterprise of maintaining," and not mere casual or occasional work on a structure. The other words in subsection 1 of section 3, pertaining to structures, are more definite and certain, as the words "erection," "remodeling, altering or demolishing" all refer to an operation for the creation or changing of the structure, which confers a definite and understandable purpose, whereas "maintaining" means to keep or hold in a way suitable for use.

In *Johnson Co. v. Industrial Com.* 306 Ill. 197, the defendant was in the business of manufacturing barrels in a factory, which consisted of several buildings with three smoke stacks. The owner employed a subcontractor to paint the chimneys, and, while thus engaged, the employee

of the subcontractor fell and was seriously injured. The court held that the business of the defendant was cooperage, and that the buildings were only a necessary incident or means for carrying on the business, and that the machinery and smoke stacks and other conveniences were for carrying on business, and not for obtaining separate income, and hence did not come within the provisions of the compensation act.

In *Lombard College* v. *Industrial Com.* 294 Ill. 548, a plumber was employed to repair a gas leak in the president's residence, and his employee was injured while doing the work and sought to hold the college under section 31. It was held that a college was not engaged in the "enterprise or business of building, maintaining, or demolishing of structures" from the fact that it owned a residence occupied by the president, where the work was done. And, in *Therien* v. *Industrial Com.* 351 Ill. 166, it was held that a person who operated a nursing home was not liable to a janitor upon the theory that such an enterprise constituted the business of maintaining or repairing a structure.

These cases indicate that for an owner to become liable under section 31 of the act, one of the principal purposes of the enterprise or business of the owner must consist of the business of maintaining a structure, and hence painting a smoke stack, or fixing a leaky gas main, or shoveling coal in a rooming house, did not bring the principal occupation under the appellation of the business of maintaining a structure.

On the other hand, the respondent cites a number of cases in which liability to pay the compensation was upheld under section 31 of the Workmen's Compensation Act. In *Davis* v. *Industrial Com.* 297 Ill. 29, the defendant was running an apartment building in which it was necessary for proper maintenance to clean the walls, and liability was upheld. In *Jacobi* v. *Industrial Com.* 342 Ill. 210, a flat building, in which the owner lived and rented a number

of apartments for revenue, was in need of paint in the light shaft, and it became necessary to have such work done as a part of the maintenance. A workman of a subcontractor injured while painting the shaft was awarded compensation from the owner. And in *Walsh* v. *Industrial Com.* 345 Ill. 366, the person charged owned a number of houses, and, during the repair of a roof of one, the employee of a subcontractor was injured. In all of these cases it was held that the maintaining of the structures upon which the subcontractors' employees were injured was a necessary and essential enterprise from which substantial revenue was derived, which made the maintaining a substantial part of the business in which the defendant was engaged.

The cases of *Storrs* v. *Industrial Com.* 285 Ill. 595; *National Alliance* v. *Industrial Com.* 364 Ill. 249, and *Sneeden* v. *Industrial Com.* 366 Ill. 552, involved the same proposition of operating houses or buildings for profit, during the maintenance of which a subcontractor's employee was injured, bringing them under the provisions of section 31 of said act.

In *Walsh* v. *Industrial Com.* 345 Ill. 366, these two lines of decisions were reviewed, and both the words "maintain" and "business" were defined. We there said that "maintain" means "the act of holding or keeping in any particular state or condition," and that therefore the business of "maintaining" a structure is the business of holding and keeping the same in repair. We also held that the "term 'business,' in common parlance means an employment which occupies a substantial portion of the time and attention of one engaged in it;" and, after considering the cases, stated: "The line of demarcation between maintaining a structure as an incident rather than as a business, and the business of maintaining a structure, is not readily defined, but we are of the opinion that a safe rule is, that where one maintains buildings or structures for profit,

whether that profit be as compensation for his services or by way of rentals received, and such maintenance requires a substantial portion of his time and attention, he must be said to be engaged in the business of maintaining a structure within the contemplation of the Workmen's Compensation act."

In the cases in which compensation was allowed from those charged with maintaining a structure, the rental or income from the use of the property was the principal benefit derived from the property, whereas, in the cases where no liability was sustained there was no income received, or it was so trifling as not to be dignified by the label of business. Under these tests it is quite clear that the subleasing of a room for $12 per month, to keep from being dispossessed of a large room used in the course of its enterprise, does not constitute the business of maintaining a structure, because of the trifling rental received. We are clearly of the opinion that the petitioner was not liable by the application of subsection 1 of section 3, and section 31 of the Workmen's Compensation Act.

The second ground upon which it is sought to charge the petitioner, grows out of the claim that the petitioner is in the business of "construction, excavating or electrical work," and if so, did the petitioner engage a contractor to perform electrical work for the petitioner? None of the cases cited define electrical work as used in subsection 2 of section 3, nor do we deem it necessary to do so here, as the critical problem on this branch of cases is whether respondent was doing electrical work when injured.

There can be no question but that petitioner is engaged in some department of electrical work when it manufactures electricity, but, conceding this as a fact, it does not establish that the washing of office windows once a week is electrical work. Section 3 provides that the Workmen's Compensation Act shall apply automatically to all employers and their employees engaged in any department of the

enumerated businesses, and since the general language of section 3 applies to all of ten different classifications of business, then, necessarily, the same test should be applied to all of the different classifications to determine whether the injured workman is entitled to compensation.

The fact that as to part of the classifications the owner is liable for the acts of his subcontractor does not change the test as to whether the work at the time of the injury was an essential part of the principal contractor's business.

The cases deciding whether an employee is engaged in a part of the extra-hazardous business and entitled to compensation under other classifications of section 3 are valuable in construing subsections 1 and 2 of section 3 in connection with section 31 of the act. In other words, if the law makes the employees of a subcontractor in such cases constructively the employee of the owner hiring the contractor, the test as to whether the work done is a part of the occupation should be the same. It therefore becomes pertinent to ascertain whether window washing is part of the business of electrical work. "Business" is another way of defining the manner in which individuals make or earn a living. Merely because one in a given line of business deemed to be extra-hazardous occasionally requires something to be done entirely outside of his purpose, but convenient to his operation, does not of necessity bring the person so working within an extra-hazardous occupation.

In *Compton* v. *Industrial Com.* 288 Ill. 41, and in *Board of Education* v. *Industrial Com.* 346 Ill. 505, it was held janitors working for a school board, who were injured doing work in the yard or on the premises outside of the structure, were not in an extra-hazardous occupation though maintaining the structure was. In *County of Christian* v. *Industrial Com,* 391 Ill. 475, it was held that a nurse injured on the highway, while taking care of the sick for a divisional unit of the county, was not within the protection of the Workmen's Compensation Act because the office of

such directing body was in the court building, which was a structure deemed extra-hazardous under the statute. These decisions go only to the point of holding that an employer may do different kinds of business, parts of which are deemed hazardous and others not, and even one in an extra-hazardous business may occasionally perform, or have performed, some act which does not come within the scope of the hazards of the business.

This leads to the consideration of whether window washing is deemed to come within the scope of the business of doing electrical work. We find no cases cited from this State, but there are a number from outside jurisdictions the reasoning of which is persuasive. In *American Radiator Co.* v. *Franzen,* 81 Colo. 161, 254 Pac. 160, the petitioner was an employee of a window-cleaning company, and was awarded compensation against the radiator company, for whom the window-washing company had agreed to wash windows. The court reversed the finding in favoi of the injured person, saying that the business of the subcontractor was window cleaning. It was employed by the radiator company, whose business was manufacturing and selling heating plants, and the question arose under a statute similar to section 31. In passing adversely upon the claim for compensation the court said: "The 'business' of a person, as the word is here used, is that calling which he pursues for a livelihood or gain. Washing windows is not a part of the business of manufacturing and selling heating systems."

In *White* v. *Nat. Window Cleaning Co.* 132 Neb. 155, 271 N.W. 341, a proceeding was brought to require a window-washing company and the Penney Company to pay compensation for the death of one of those working for the window-washing company. The Penney Company employed the window-washing company to clean windows for $20 per month, and the employee of the window-washing company while doing this work was killed. Nebraska also

had a provision in its compensation act similar to section 31, and it was held that the deceased did not become an employee of the Penney Company and entitled to the protection of insurance taken for the benefit of the Penney Company employees.

In *Packett* v. *Moretown Creamery Co.* 91 Vt. 97, 99 Atl. 638, the creamery company engaged a builder to erect the creamery building in conjunction with its business, and an employee of the building company was injured. An award was made in favor of the building company's employee against the creamery company, but was reversed. Vermont had provisions in its compensation act quite similar to those of Illinois, and, in rejecting the claim for compensation, the court said: "The true test is, did the work being done pertain to the business, trade, or occupation of the Creamery Company, carried on by it for its pecuniary gain? If so, the fact that it was being done through the medium of an independent contractor would not relieve the company from liability. The finding of the Board is that the Creamery Company at the time of the injury was engaged in the creamery business. There is nothing to show that the company was engaged in the business of erecting buildings, unless such is the effect of the fact that Flynn was erecting for it a building under a contract which made him an independent contractor and not an employee. * * * It would be quite as reasonable to say that Flynn was engaged in the creamery business in contemplation of the act as that the Creamery Company was engaged in the business of erecting buildings. As well say that a farmer who lets a contract to build a barn or corncrib on his premises is engaged in the business of contractor or builder, or that the business of the contractor while thus engaged is that of farming."

In *McGrath* v. *Penn Sugar Co.* 282 Pa. 265, 127 Atl. 780, the employee of a stevedoring company was injured while engaged in the loading of a shipment of sugar from

a refining company's wharf to a ship. The refining company was engaged in the refining of sugar. The handling of the raw product from ships was carried on by employees of the stevedoring company engaged by the refining company. It was held that under such fact the refining company was not liable under a section of the compensation act imposing liability upon an employer for compensation of employees of a contractor, in the case of the performance of a part of his business which had been entrusted to the contractor.

In *Corbett's case,* 270 Mass. 162, 170 N.E. 56, it was held that work done by an independent contractor, who was engaged to make "an accumulation of ordinary day-to-day repairs" upon the building of a company engaged in the manufacture of rubber-covered wires for electrical purposes, was not a part of the business carried on by the manufacturing company, and that said company was not liable for an injury received by the employee of the independent contractor, under the statute.

In *Rinebold* v. *Bray,* 248 Mich. 321, 227 N.W. 712, under an analogous provision of the compensation law, it was held that the employee of a subcontractor engaged in the general carting business, who was injured while picking up tools that had fallen from the truck of the subcontractor, who had been employed in hauling pipe, was not at the time of his injury engaged in the work undertaken by the principal contractor, and was accordingly denied compensation.

A number of similar cases from other States might be cited. The only case cited in opposition is *Fox* v. *Fafnir Bearing Co.* 107 Conn. 189, 139 Atl. 778, in which a result contrary to the above decisions was reached, but the weight of this case is greatly impaired by the later case of *Bryan* v. *Waterbury Battery Co.* 129 Conn. 44, 26 Atl. 2d 467, where the employee of a subcontractor, while working on a building to provide more space for the operation of the

manufacture of batteries, was denied compensation. We think the majority rule is contrary to the earlier Connecticut case.

From the foregoing authorities, and many others cited in a note in 150 A.L.R. 1214, the general trend, while not laid down with exactitude, seems to hold that where the work in which the employee is engaged does not enter into the commercial functions of the principal employer, but only affords facilities or casual convenience for the conduct of the trade or business, it cannot be held to be a part of the business or enterprise of the employer. As an application of this distinction, we held in *Uphoff* v. *Industrial Board,* 271 Ill. 312, that to say that the word "enterprise" or "business" covered the building of any structure, however small, would lead in some instances to absurd consequences. At page 317, we said: "A chicken coop or dog kennel ten feet square and four or five feet high would be a 'structure' in a technical sense of the term, but it would hardly be contended that such a structure was within the meaning of this act, according to the intent of the legislature. "Carriage by land," under subdivision 3 * * * in the strict, literal meaning of the term might require that it include the hauling of grain by team and wagon from the farm to the elevator. Surely that was not within the legislative intention. The word 'excavating,' under subdivision 2 * * * might cover, technically, the digging of a post-hole on a farm, but it was certainly never so intended. It is plain from the use of the word 'enterprise' in other subdivisions of said paragraph (b) that it was intended to mean a work of some importance that might properly be considered arduous or hazardous."

In view of all of these authorities, we are constrained to hold that the cleaning of the office and show windows of a utility plant cannot be held to be a part of the business of electrical work. Since it cannot be so considered a part of the business for the owner to occasionally employ a

window washer to facilitate the entrance of light into the plant office or showroom, it seems equally clear that the employee of an independent contractor cannot, for like reason, be deemed to be employed in the business or enterprise of electrical work. We are, therefore, of the opinion that the petitioner was not liable to pay compensation to the injured employee of independent contractor Benford for injuries arising in the manner disclosed by the record in this case.

It is, therefore, adjudged that the order of the circuit court of Rock Island County confirming the award of the Industrial Commission in favor of Kenneth Robison, and against the petitioner be and is hereby reversed, and the award of the Industrial Commission set aside.

*Judgment reversed, award set aside.*