STATE, Respondent, vs. JOE MUST GO CLUB OF WISCONSIN, INC., Appellant.

*May 2—June 1, 1955.*

For the appellant there was a brief by *Willard S. Stafford,* attorney, and *Clifford G. Mathys* of counsel, both of Madison, and oral argument by *Mr. Stafford.*

For the respondent there was a brief by the *Attorney General* and *Stewart G. Honeck,* deputy attorney general, and *William A. Platz,* assistant attorney general, and oral argument by *Mr. Platz.*

BROADFOOT, J. On January 12, 1905, the then governor of the state of Wisconsin included the following in his message to the legislature:

"The Corporation in Campaigns and Elections.

"The participation in government of the corporation as a corporation is a menace. Its action is governed by no sense of individual or personal responsibility. It is controlled by no sentiment of patriotism. *Corporations are organized for profit and gain, and enter the field of politics solely in the interests of the business for which they are created.*

"I believe it to be vitally important that corporations should be prohibited by law from contributing money for political purposes. Individuals may properly contribute to pay the legitimate expenses of conducting political campaigns. Money so contributed is given with the personal responsibility of the individual making the contribution. But when corporations can *furnish money from corporation treasuries* to carry elections individual free will and responsibility is gone. Should the custom of the corporation contributions to campaigns grow broad enough, the whole character of the government would be changed, and corporations not men would rule. The money power would then become the controlling power in the state. There is no surer way of undermining and finally overthrowing free popular government than allowing the system of corporation contributions in political contests and campaigns." (Emphasis supplied.) Journal of the Senate of the Wisconsin Legislature, Vol. 1, 1905, p. 89.

Thereafter ch. 492, Laws of 1905, was enacted by the legislature. The pertinent part thereof was as follows:

'POLITICAL CONTRIBUTIONS BY CORPORATIONS PROHIBITED. Section 1. No corporation doing business in this state, shall pay or contribute, or offer, consent, or agree to pay or contribute, directly or indirectly, any money, property, free service of its officers or employees or thing of value to any political party, organization, committee, or individual for any political purpose whatsoever, or for the purpose of influencing legislation of any kind, or to promote or defeat the candidacy of any person for nomination, appointment, or election to any political office."

By ch. 500, Laws of 1943, the statute was amended to read as follows:

"No *foreign or domestic* corporation, *and no association organized under chapter 185* doing business in this state, shall pay or contribute, or offer, consent, or agree to pay or contribute, directly or indirectly, any money, property, free service of its officers or employees or thing of value to any political party, organization, committee, or individual for any political purpose whatsoever, or for the purpose of influencing legislation of any kind, or to promote or defeat the candidacy of any person for nomination, appointment, or election to any political office."

It will be noted that the only change in the statute was the addition of the words italized above. Associations organized under ch. 185, Stats., are co-operative associations and the only effect of the 1943 amendment was to prohibit co-operative associations from making political contributions.

To sustain the judgment it was the duty of the state to prove a violation of each provision of the statute. It is admitted that the defendant is a domestic corporation and its location is within the state. The next question to be determined is whether the defendant, at the time of the acts complained of, was doing business as contemplated and intended by the legislature when it adopted the statute.

This court has had few occasions to define the word "business." Perhaps this is so because it has felt that everyone knows what "business" is. In the case of *Vandervort v. Industrial Comm.* 203 Wis. 362, 367, 234 N. W. 492, this court did adopt a definition of the word as follows:

"They all express the view that the term 'business' as used in this provision [sec. 102.07 (4), Stats.] has the same meaning as the words 'trade' or 'profession,' and that it does not include any and all casual, isolated, and desultory activities which may be undertaken from time to time. It has been given its popular conception and construed to mean just as Webster defines it: 'some particular occupation or employment habitually engaged in for livelihood or gain.' "

Definitions in other jurisdictions are as follows:

The word "business" is generally and commonly used in reference to the work in which one is regularly or usually engaged; it is the activity on which he spends the major portion of his time and out of which he makes his living; it does not mean an isolated or temporary adventure in another line of endeavor. *Bowen v. Merchants Mut. Casualty Co.* (N. H.), 107 Atl. (2d) 379, 385.

"Business," in a legislative sense, is that which occupies the time, attention, and labor of men for purposes of livelihood or for profit; a calling for the purpose of a livelihood. *Los Angeles v. Cohen,* 124 Cal. App. (2d) 225, 228, 268 Pac. (2d) 183, 185.

The commonly accepted meaning of the term "business" is that which occupies time, attention, and labor of men for purpose of livelihood or profit. *Novak v. Redwine,* 89 Ga. App. 755, 757, 81 S. E. (2d) 222, 224.

"Business" is another way of defining a manner in which individuals make or earn a living. *Iowa-Illinois Gas & Electric Co. v. Industrial Comm.* 407 Ill. 360, 368, 95 N. E. (2d) 482, 487.

Any activity which occupies the time, labor, and attention of men for purpose of earning a livelihood is a "business." *City and County of Denver v. Gushurst* (Colo.), 210 Pac. (2d) 616, 618.

An enterprise not conducted as a means of livelihood, or for profit, does not come within the ordinary meaning of the terms "business," "trade," or "industry." *Coos Bay v. Aerie No. 538 of Fraternal Order of Eagles,* 179 Or. 83, 105, 170 Pac. (2d) 389, 399.

Each of the above indicates a profit motive when reference is made to doing business. In any event, in the *Vandervort Case, supra,* this court adopted a definition from Webster's Dictionary and that case has been cited with approval upon other occasions. As the population increases and new problems arise that call for legislative and judicial action, it is possible now to find broader definitions of the word "busi-

ness." However, we are concerned with the legislative intent at the time this prohibitory legislation was adopted. It is apparent that at that time the profit motive was inherent in the use of the word and from the governor's message that inspired the legislation no other conclusion can be reached but that the activities of corporations to be prohibited were those of corporations engaged in a business for profit and gain, and the prohibition was directed against the furnishing of money by corporations from funds derived from their profits.

The defendant also contends that the legislature recognized the limited coverage of the original law by amending it in 1943 to include "associations organized under chapter 185." Co-operatives organized under the provisions of ch. 185, Stats., were and are corporations although referred to for convenience as "associations." The defendant contends that the rule *expressio unius est exclusio alterius* is applicable. It is argued that the original statute referred only to business corporations incorporated under another chapter of the statutes. In its wisdom the legislature felt that the prohibition of the statute should be extended to include co-operatives, many of which are prohibited by their articles and by-laws from making a profit, and if the legislature intended to prohibit nonstock, nonprofit corporations, or corporations organized solely for political purposes it would have been easy to include them in the 1943 amendment.

We cannot agree wholly with this contention. The powers and purposes of a corporation cannot be determined entirely by its declaration thereof in its articles of incorporation and by-laws, but consideration must be given to the manner in which it is conducted. Today many corporations organized without capital stock, and with an avowed purpose of operating without profit, do engage in business and do make profits which are used for the furtherance of the activity for which they were incorporated. The statute under consideration is

broad enough to prohibit them from taking such profits from their treasuries and diverting them for political purposes.

The defendant further directs our attention to the provisions of sec. 12.09 (5), Stats. This subsection was enacted in 1923 and contains the first reference in the Corrupt Practices Act to corporations organized for political purposes. Enactment of sub. (5) of sec. 12.09 with its subsequent amendments was a recognition by the legislature that corporations organized solely for political purposes can engage in political activities if they report such activities, including receipts and disbursements for political purposes, the same as individuals and unincorporated organizations.

There is some disagreement between the parties as to whether this is a criminal prosecution or a forfeiture action. It was started as a criminal action by the filing of an information but the judgment provided for a forfeiture. We do not think it necessary to resolve that dispute. In any event, we are dealing with a penal statute and this court has often stated that statutes imposing penalties must be strictly construed and doubtful questions thereunder are to be resolved favorably to those from whom the penalties are sought to be recovered.

The defendant further contends that in this case there was a total failure of proof under the information as filed. We agree with this contention. There is no proof in this record that the defendant engaged in business as contemplated by the statute, which would be necessary in order to sustain the judgment. From the record before us there is insufficient proof that the contributions and offers to contribute were made by the defendant. Two of the checks bear a date that is prior to the date of incorporation of the defendant. There is no proof that funds raised by the unincorporated organization were transferred to the corporation, and the payments

and offers thereof which are complained of might well have been made by the unincorporated organization, or by the "Joe Must Go" Fund which, so far as the record is concerned, might be still another organization.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the information.