HIBLER *v.* GLOBE AMERICAN CORPORATION.

[No. 19,034. Filed January 13, 1958.]

158

*Floyd F. Cook, Cook, Cook, Bayliff & Mahoney, B. E. Cook,* of counsel, and *Edgar W. Bayliff,* of counsel, all of Kokomo, for appellant.

*James V. Donadio, George B. Gavit* and *Ross, McCord, Ice & Miller,* of counsel, all of Indianapolis, for appellee.

KELLEY, C. J.—This appeal presents only a question of law. The question is: Does an amendment extending the time for filing claims under the Indiana Occupational Diseases Act [Acts 1937, ch. 69, §25 (c), Burns' 1952 Replacement, §40-2225 (c)] from one year to two years, authorize the filing of a claim thereunder after one year but within two years from the date of a disablement which occurred at a time when the one year period was effective, said amendment being enacted prior to the expiration of the one year period? Appellant suffered his disablement on May 28, 1954. On that date said §25 (c) of ch. 69, Acts 1937, Burns' 1952 Replacement, §40-2225 (c) provided that claims for compensation shall be filed within one (1) year after the date of disablement. By Acts 1955, ch. 195, §2 (c), said §25 (c) of ch. 69 of the 1937 Acts, was amended, effective March 9, 1955, to provide that such claims shall be filed within two (2) years after the date of disablement. Appellant filed his claim on March 20, 1956, and the Industrial Board held that it had no jurisdiction in that the claim was not filed within one year after appellant's disablement. We are asked to reverse that award as being contrary to law.

In the case of *F. Conrad Oberg* v. *D. O. McComb & Sons* (1957), 127 Ind. App. 278, 141 N. E. 2d 135, we

held that when the time for the filing of a claim under said 1937 Act had expired prior to the effective date of the 1955 amendment, the latter did not have the effect of revitalizing appellant's claim filed more than one year after his disablement. In the case now before us, the 1955 amendment became effective prior to the expiration of one year following appellant's disablement and prior to the filing of his claim for benefits. For this reason, appellant contends that the 1955 amendment granted him two years from the date of his disablement in which to file his claim and that having done so, his claim was filed in time.

It has been consistently held by our courts that the provisions of the Workmen's Compensation Act are construed in the nature of a contract between the employer and employee and in the Oberg case, above referred to, it was declared that the provisions of the Occupational Diseases Act are also to be construed as in the nature of a contract between the employee and the employer. See *Oberg* v. *McComb & Sons, supra,* points 1-4.

The contractual rights, duties and obligations of the parties are supplied and defined by the respective Workmen's Compensation Act and Occupational Diseases Act. By the terms of said Acts all the common law remedies and defenses are dispensed with. The employee's potential right to compensation and the obligation of the employer to pay when the potential right is established spring from the contract, not from tort or an act of negligence. By reason of the contractual relationship, the employee is not required to allege or prove any tort or act of negligence by the employer and the latter cannot set up common law defenses to the employee's action or claim. The employer, when the contractual right of the employee to the benefits afforded by the contract has been established, must dis-

charge his contractual liability by paying such benefits at the time or times and in the amount or amounts provided in the contract.

Among other considerations, the contract bears the mark of mutuality by providing the limits of the employer's financial liability and the limit of the time within which the employee's claim against the employer must be filed. By the contract, the employee has agreed that if he asserts a claim against the employer, which claim, as we have said, is a potential right of recovery arising out of the provisions of the contract, he will file such claim within the time agreed upon in the contract. Consequently, the employer's liability, which also arises out of the contract terms, is limited in time to the period within which the employee has agreed to file his claim or action.

Thus the "time within which the suit must be brought (by the employee) operates *as a limitation of the liability,* and not of the remedy alone. *It is a condition attached to the right to sue at all.* Time has apparently been made of the essence of the right, and *the right is lost if the time is disregarded.*" (The brackets and italics are ours.) *Keser* v. *U. S. S. Lead Refinery* (1928), 88 Ind. App. 246, 163 N. E. 621, 78 A. L. R. 1294.

In *Oberg* v. *McComb & Sons, supra,* it is said:

"It follows that the Occupational Diseases Act affords *a separate and distinct contract,* with terms and conditions supplied by the statute, *between each employee and his employer.* It follows, also, that the application of the various terms of the statutory contract is governed by the particular circumstances *arising and existing with reference to the claim of each employee.* Thus it appears that appellant's statutory contract with the appellee, *at the time appellant suffered his disablement,* was that he, appellant, *had one year from the date of his disablement within which to file his claim;* while the statutory contract

of another employee of appellee, *whose disablement begin on or subsequent to March 9, 1955, gave him two years from the date of his disablement within which to file his claim."* (Our emphasis.)

In the same case it is further said:

*"Prior to the amendment effective March 9, 1955, the rights of the parties under their contract,* by force of circumstances occurring during the life of said contract, *had become fixed and matured. The subsequent enlargement of the time* within which claims could be filed *did not,* we think, *alter or change the fixed status of the parties."* (Our emphasis.)

While the expressions in the Oberg case are not here conclusive nor determinative, they shed light upon the path now tread. It would seem without room for dispute that if appellant possessed a potential right to benefits, his claim or cause of action therefor arose, by reason of and on the date of his disablement (May 28, 1954), and existed only by virtue of his then prevailing statutory contract with appellee. That contract, as evidenced by the Occupational Diseases Statute then in force, provided that he would assert his claim within one year after his disablement. Under that contract appellee's liability to pay any benefits awarded or agreed upon became fixed. And such potential liability of appellee, under the provisions of his contract with appellant, remained subject to the exercise of appellant's potential right during the agreed time of one year after the disablement.

If appellant's contention is to be adhered to, then, in effect, we would be required to say that although appellant's right to claim benefits arose under one express contract, yet he should be permitted to recover upon the terms of another and different contract. It seemingly must be conceded that the contract, evidenced

by the Occupational Diseases Act, in force and effect between the parties on the date of appellant's disablement is not the contract which appellant now seeks to enforce against appellee. The contract now sought to be enforced by appellant is evidenced by the Occupational Diseases Act on March 9, 1955, with provisions differing from those prevailing on May 28, 1954.

Appellant's disablement and his potential right to proceed for recovery of benefits therefor came into *esse* at the time his contract was evidenced by the Act of 1937, not the Act of 1955. The latter Act became effective after appellant's contractual right to seek recovery had accrued. The terms and conditions supplied by the Act in existence at the time of appellant's disablement, including the provision as to the time within which he would assert his claim against appellee, are the terms and conditions which control and which appellant would be required to rely upon. The time limitation provided therein is a limitation of the employer's liability and is a condition attached to the right to proceed with the action and the right to recover therein; and the burden rests upon the employee to prove that the asserted right was filed within the time provided by the Act which constituted the contract between the parties at the time the right to assert a claim for disablement arose. Any other construction would provoke confusion and uncertainty and render the contract between the parties an instrument only of form without any reliable substance.

Assume, for instance, that the employee's disablement occurred on February 1, 1955, and the time limitation was then one year. On March 9, 1955, an Act becomes effective which extends the time limitation to two years. Now, under appellant's contention, the employee would, by virtue of the new Act, have until January 31, 1957, to file his claim. But

on a day prior to January 31, 1957, an Act is enacted by the Legislature, containing an emergency clause, which extends the time limitation to fifteen years. If appellant's proposal is adopted, the employee would then have until January 31, 1970 in which to file his claim. And it is possible that succeeding legislatures during the fifteen-year period could variously change the time limitation. It is apparent from the above assumption, however improbable it may be considered, that endless confusion and sacrifice of contractual definiteness would be possible upon judicial recognition of appellant's contention. The general aim of both the Workmen's Compensation and Occupational Diseases Acts is to provide contractual provisions conducive to prompt and undelayed determination and settlement of the employee's claim and the liability of the employer. Such result cannot be attained if there be no enforceable certainty of their contractual relationship.

Appellant's brief exhibits some confusion in finding solid ground for his advanced proposition. For instance, he says: "Simply stated the Indiana Workmen's Compensation Act, or Occupational Diseases Act, is contractual, *and its provisions become part of the employment contract.* Now, if the contract of employment has a limitation period for the enforcement of the injured employee's rights under the contract, *such limitation period becomes a condition precedent to the right to maintain any action.* It is not regarded merely as a statute of limitations, but becomes a part of the contract *and affects the rights of the parties.* Whatever the compensation law is, . . . *the provisions of the Act are merged with the contract of employment.*" (Our emphasis.)

At a later time appellant says: "Since neither the employer, nor the employee, can contract away the power of the Legislature to change the law, they neces-

sarily contemplate such further exercise of legislative authority so long as the Legislature does not impair vested rights, *or materially affect the obligation of contracts."* (Our emphasis.)

If, as our courts have said and with which appellant seems to agree, the time limitation becomes a part of the contract affecting the rights of the parties and is a limitation upon the liability of the employer so that it is a "condition precedent to the right to maintain *any* action," then it would logically seem that legislative change of the terms of that agreement as to the time limitation, subsequent to the date a right of action accrued on the contract by reason of disablement of the employee, would be such as to "materially affect the obligation" of the contract. This is particularly true under the holding of our court that time is made the essence of the right, and the right is lost if the time is disregarded. See *Keser* v. *U. S. S. Lead Refinery, supra.*

We are not here dealing with an ordinary statute of limitations and it does not appear to be so contended. We are dealing with a special statutory limitation which is construed as in the nature of a contract between the employee and the employer. There is a vast difference in the interpretation and application of the two, as is stated in 53 C. J. S., Limitation of Actions, §1b, (2), (c), p. 904, in these words:

"A wide distinction exists between pure statutes of limitation and special statutory limitations qualifying a given right in which time is made an essence of the right created and the limitation is an inherent part of the statute or agreement out of which the right in question arises, so that there is no right of action whatever independent of the limitation; a lapse of the statutory period operates, therefore, to extinguish the right altogether. To such limitations the rules of law governing pure statutes of limitation, applicable to all classes of action, have no application; . . . . "

In 34 Am. Jur., Limitations of Actions, §7, p. 16, the principle is aptly put in this wise:

"A statute of limitations should be differentiated from conditions which are annexed to a right of action created by statute. A statute which in itself creates a mere liability, gives an action to enforce it unknown to the common law, and fixes the time within which that action may be commenced, is not a statute of limitations. It is a statute of creation, and the commencement of the action within the time it fixes is an indispensable *condition of the liability and of the action* which it permits. *The time element is an inherent element of the right so created, and the limitation of the remedy is a limitation of the right.*" (Our emphasis.)

The Act of March 9, 1955, insofar as we have been able to ascertain, evinces no intention of the Legislature that it should be retroactive. In the absence of such intent apparent from the amending Act itself, it will be given a prospective effect and not considered as retroactive. This is in accordance with the general rule. *Chadwick, Treasurer et al.* v. *City of Crawfordsville* (1940), 216 Ind. 399, 413, 414, 24 N. E. 2d 937; *Tecumseh Coal and Mining Company* v. *Buck* (1922), 192 Ind. 122, 130, 135 N. E. 481; *Jackson, Secretary of State* v. *Pittsburgh, Fort Wayne and Chicago Railway Company* (1923), 193 Ind. 157, 165, point 1, 139 N. E. 320; *Young et al.* v. *State ex rel. School City of Gary, Lake County, Indiana* (1952), 230 Ind. 315, 323, 103 N. E. 2d 431; 25 Ind. Dig., Statutes, §263, pp. 447, 448. It must follow, then, that the one year limitation provided in the statutory agreement of the parties at the time of appellant's disablement governs the latter's right to maintain proceedings based thereon and such right expired with the expiration of the year limitation.

Appellant relies upon the case of *In Re Smith*

(1945), 115 Ind. App. 494, 60 N. E. 2d 147. That case does not afford much aid for the solution of the problem at hand. It was a question of law certified, with a statement of facts, to the court by the Industrial Board, from which it appeared that the employee was injured on January 27, 1942, and on February 26, 1942, a compensation agreement on Form 12 was entered into and complied with by the employee and the employer. On January 19, 1943, the employee filed his application for review of the agreement award and the proceedings thereon developed the certified question from the stipulated facts: that on May 6 and 7, 1943, and July 8 and 9, 1943, the employee, *at the request of the employer,* went to St. Louis, Mo., for medical examination relative to the impaired vision of his eye, thereby losing his wage of $7.00 per day for the four days. Effective April 1, 1943, §27 of the Workmen's Compensation Act was amended to provide in substance that after an injury and during the period of disability or impairment the employee, *if so requested by his employer,* shall submit to examination by a qualified physician or surgeon designated and paid for by the employer, and if the employee lost working time therefrom, the employer shall reimburse him upon the basis of his average daily wage. The question was whether the Board should award that the employer reimburse the employee for the $28.00 lost wages.

The court, in answering the question, held the amendatory Act to be remedial and procedural and that its purpose was to indemnify the employee from loss of wages *"if the employer elects* to take advantage of the privilege to require the employee to submit to a medical examination" at the times and places designated by the employer. (Our emphasis.) The court further held that the statute infringed no vested right of the employer and that it could not be seriously contended

that the reason which prompted the legislative enactment of the amendment should extend to past transactions. The amendment there considered did not affect any fixed or substantive rights of the parties under their employer-employee agreement. It did not substantially change or alter any material provision of their agreement, it merely granted them a contract permission to elect a medical examination during the impairment or disability period, on the one hand, and to be paid for lost wages by reason thereof, on the other hand. No substantive, fixed, or vested right of either party under their statutory contract was in any wise disturbed or affected. However, in the case now under our consideration, the limit of the employer's liability, a substantive right, was fixed at one year by the happening of appellant's disablement prior to the amendatory Act of March 9, 1955. Thus, the question we now have is unaided by the doctrine of the In Re Smith case, and the latter lends no support to appellant's position.

Appellant, in his reply brief, also refers to the case of *Inland Steel Co.* v. *Jelenovic* (1926), 84 Ind. App. 373, 150 N. E. 391, and says "the court held that the statute for bringing a compensation act (claim?) was tolled by World War I. If the war could toll the statute, it is our contention that the amendment could do the same thing." As was said by the court in the *Keser* v. *U. S. S. Lead Refinery, supra,* in reference to the aforesaid Jelenovic case, "The decision of this court in that case, however, would have no bearing on the present case, since, in the former case, *the statute was suspended* by reason of a declaration of war." (Our emphasis.) Whether we may now think that the Jelenovic case was rightly decided is of no consequence, as it possesses no bearing upon the instant inquiry and supports no proposition here advanced.

.Lastly, appellant urges that the amendatory Act of March 9, 1955, repealed the statute existing at the time of his disablement, and since the one-year limitation under the repealed Act had not expired when the amendatory Act became effective, appellant is left with no right to compensation, and that unless we hold that the amending statute applies to pending litigation, it must be considered unconstitutional as depriving appellant of a vested right.

While we think that appellant, by reason of his disablement, became thereby vested with a right under his then existing contract to proceed and maintain an action for his contractual benefits, we believe that his premise is ill founded. The amendatory Act of 1955 contained no repealing clause. Nor did it repeal or take away from appellant any right he possessed under his contract as evidenced by the Occupational Diseases Act in force and effect at the time of his disablement on May 28, 1954. The amendatory Act simply conferred upon those disabled after March 9, 1955, a contractual right not theretofore existing, namely: an additional year (or a total period of two years from the date of disablement) in which to institute and maintain an action or claim for compensation for such disablement. Our court, in several reports, has ruled on the matter in analogous cases contrary to appellant's proposal.

In *Collwell* v. *Bedford Stone and Construction Company* (1920), 73 Ind. App. 344, 126 N. E. 439, the widow of a deceased employee had applied for compensation. On the date of his death from personal injuries received by accident arising out of and in the course of his employment, the Workmen's Compensation Act provided compensation for a wife who was living :with the deceased employee at the time of his

death, or, if not so living with him, was in fact dependent upon him for support. The facts found by the Board showed that the widow was not living with the decedent at the time of his death and was not dependent upon him for support. She was denied compensation by the Board. Some thirty-three days after said employee's death, the said Compensation Act was amended to add a provision for compensation for the wife of a deceased employee "upon whom the laws of the State impose the obligation of her support at such time," and the widow, in said cause, contended that she had the right to avail herself of such amended provision.

In ruling on the contention, the court said, in part pertinent to our inquiry:

"In determining this contention it should be borne in mind that the Workmen's Compensation Act, supra, when accepted by an employer and an employee, becomes a part of the contract of employment between them. . . . . As the decedent was injured and died on April 12, 1919, it is evident that his contract of employment with appellee was entered into while said §38, as originally enacted in 1915, was in force. In view of this fact appellee contends that said original section became a part of the decedent's contract of employment, and *that appellant's right to compensation must be determined thereby.* We are of the opinion that this contention must be sustained. . . . . The Legislature of 1919, . . . therefore so amended said §38 as to give a right of compensation to another class for which no provision had theretofore been made, . . . . This we hold was the conferring of a right not theretofore existing, and should not be construed as retroactive, as we would be compelled to do in order to sustain appellant's contention." (Our emphasis.)

It is apparent that the court in that case determined, in effect, two propositions pertinent to our present

inquiry: (1) That the rights of the parties must be determined by the section of the Act which was a part of decedent's contract of employment at the time of his death; and (2) that the later amendment of the Act in force at the time of decedent's death did not affect appellant's right to proceed under the original Act. She failed in her action solely because her evidence did not bring her within the terms of decedent's contract of employment as evidenced by the Act in force at the time of his death.

While we deem it unnecessary to here give extended consideration thereto, we call attention to the holdings in the following cases, which holdings, we believe, are consonant with our inclination on the present question. See *Riggs* v. *Lehigh Portland Cement Company* (1921), 76 Ind. App. 308, 131 N. E. 231, *Central Indiana Railway Company* v. *Davis, Administratrix* (1921) —Transfer denied June 6, 1922, 78 Ind. App. 341, 132 N. E. 611.

There is no express saving clause in the amendatory Act effective March 9, 1955, and none seems necessary for it is clearly apparent, both from the Act and from the rules of statutory construction applied by our courts, that the legislative intent was not to destroy rights existing under the former Act in effect at the time of appellant's disablement, but to preserve and continue them. "It does not require an express saving clause to prevent the destruction of rights existing under former statutes. If the intention to preserve and continue such right is clearly apparent, it will be carried into effect." *State ex rel. Milligan, Superintendent of Madison State Hospital* v. *Ritter's Estate* (1943), 221 Ind. 456, 471, points 14-20, 48 N. E. 2d 993, quoting from *Gorley* v. *Sewell* (1881), 77 Ind. 316, 320, 321.

In the case of *Central Indiana Railway Company* v. *Davis, Administratrix, supra,* in speaking of ▮ an amendment to the Workmen's Compensation Act, the court said, apropos here:

"It is clear that a statute which makes it possible for a servant, injured through the negligence of his master, to recover damages therefor, by denying to the latter certain common-law defenses, *pertains to a substantive right, and not to a remedy or matter of procedure.* . . . A cause of action, accrued under such a statute *is a vested right, fully protected against subsequent legislative* enactments by the provisions of the following statutes . . .*" and the court here cites the statutes which are now known as §§1-302 and 1-307, Burns' 1946 Replacement.

Our cases seem consistent in holding that the rights of the parties are determined in accordance with the law, which is a part of the employee-employer ▮ contract of employment, in effect at the time of the employee's injury or disablement. In *Riggs* v. *Lehigh Portland Cement Company, supra,* it is said:

"It is the duty of the Industrial Board, when making an award, to fix the rights of the parties *in accordance with the law as it existed at the time of the injury to the workman.*" (Our emphasis.)

And in *Railway Express Agency* v. *Harrington* (1949), 119 Ind. App. 593, on page 598, 88 N. E. 2d 175, it is declared:

"Assuming a resulting injury, his (the appellee) right to recover compensation vested when he fell, and the rights and liabilities of the parties were fixed *by the law then in effect.*" (Our emphasis.)

See also the second quotation from *Oberg* v. *McComb & Sons, supra,* as set out in the early part of this opinion.

We think that under the contract of employment, as evidenced by the then existing law which formed a part thereof, the appellee held and possessed a substantial right just as valuable, just as essential, and just as enforceable as appellant's vested potential right to compensation. And that right was that the limitation of its liability was one year from the date of appellant's disablement. The employer-employee contracts, as other contracts, must, insofar as is practicable, be considered upon the basis of mutuality. The appellee's liability, upon the happening of appellant's disablement, became fixed and the appellant's right to proceed and maintain his action for the enforcement of that liability, as was indicated in the Central Indiana Railway case, above, would not be destroyed by subsequent legislation. As a matter of mutuality, then, must not the right of the appellee in regard to the limit in time of its liability be likewise subject to protection? The amendatory statute in no wise precluded or prevented appellant from exercising his vested right within the time provided by the act in force at the time of his disablement. As we have already shown, the rights of the parties, both appellant and appellee, are to be determined by the law as it existed at the time of the disablement; and there appears in the record no given reason for the failure of appellant to initiate his action within the time so provided. In fact, it may be doubted that in the absence of a suspension of the statute in time of war or a national or state emergency, or a specific statutory provision therefor, that any sufficient reason could be advanced. See the holding in *Bartlett et al.* v. *Manor et al.* (1897), 146 Ind. 621, 45 N. E. 1060.

We are not here disturbed by any question as to the time when the disablement occurred, nor are we fettered by the doctrine announced in *Winston* v. *McCormick*

(1848), 1 Ind. 56, which is confined to the application of an amendment to the pure statute of limitations. However, it is worth while to notice that the court in that case lends support to our present holding by stating that "Were the statute of limitations a part of the contract, then this plea (pleading the five year statute prior to amendment) would be valid; . . . ."

The ruling of the Board dismissing appellant's claim for want of jurisdiction in the Board is affirmed.

NOTE.—Reported in 147 N. E. 2d 19.