STONER *v.* HOWARD SOBER, INC.
[No. 19,073. Filed April 3, 1958.]

*Harry M. Stitle, Jr.,* of Indianapolis, for appellant.

*Hunt & Suedhoff,* of Ft. Wayne, for appellee.

KELLEY, C. J.—This case has been three times tried and this is the third appeal. For decision on previous appeals, see *Stoner* v. *Howard Sober, Inc.* (1954), 124 Ind. App. 581, 118 N. E. 2d 504, and *Stoner* v. *Howard Sober, Inc.* (1957), 127 Ind. App. 338, 141 N. E. 2d 458.

Appellant prosecutes the action upon the theory that she was a dependent of the deceased, David F. Stoner, at the time of his death on February 9, 1951. The only question now involved and presented on this appeal is whether she was such dependent of the de-

ceased. On this question the Board found on the third hearing that:

" . . . the plaintiff, Goldie M. Stoner, was not the common-law wife of David F. Stoner, deceased, for a period of five years immediately preceding decedent's death, to-wit: February 9, 1951; that the plaintiff was not a dependent of said decedent at the time of his accidental injury and death."

The appellant appeals on the ground that the adverse award entered by the Board on the aforesaid finding is contrary to law.

The parties stipulated and the Board found, in effect, that appellant was the common-law wife of decedent since March 19, 1946. As decedent died on February 9, 1951, appellant was not the common-law wife of decedent for the five-year period immediately preceding his death and, therefore, appellant was excluded as a presumptive dependent by the terms of §40-1403a (a), Burns' 1952 Replacement. However, appellant contends that said exclusion clause violates her constitutional rights of equal protection of the laws as guaranteed by the 14th Amendment of the Federal Constitution and Article I, §13 of the Indiana Constitution. We do not believe appellant is in position to thus challenge said section of the Act. It has been frequently declared that the rights and duties provided in the Workmen's Compensation Act are contractual in nature and arise out of the voluntary acceptance of the terms thereof on the part of the employer and employee. *Carl Hagenbeck, etc. Shows Co.* v. *Leppert* (1917), 66 Ind. App. 261, 117 N. E. 531; *Rogers* v. *Rogers* (1919), 70 Ind. App. 659, 122 N. E. 778; *Clark* v. *Woods* (1933), 95 Ind. App. 530, 183 N. E. 804; *Calkins* v. *Service Spring Co.* (1937), 103 Ind. App. 257, 7 N. E. 2d 54; *Warren* v. *Indiana Telephone Co.* (1940), 217 Ind. 93, 26 N.

E. 2d 399; *Elkhart Sawmill Co.* v. *Skinner* (1942), 111 Ind. App. 695, 42 N. E. 2d 412; *Mid-Continent Petroleum Corp.* v. *Vicars* (1943), 221 Ind. 387, 47 N. E. 2d 972; *Railway Express Agency* v. *Harrington* (1949), 119 Ind. App. 593, 88 N. E. 2d 175, 88 N. E. 2d 915; *Sollitt Construction Co.* v. *Walker* (1957), 127 Ind. App. 213, 135 N. E. 2d 623. The provisions of the Workmen's Compensation Act, as enacted and amended, form and become the terms of the contract voluntarily adopted by the employer and employee and are binding on them and their dependents. The decedent, having agreed as one of the provisions of his contract with appellee that his common-law wife should be excluded as a presumptive dependent unless such common-law marriage relationship shall have existed openly and notoriously for a period of not less than five (5) years immediately preceding his death, would be in no position to challenge his own voluntary agreement as depriving him of his constitutional rights; and, as appellant acquires any rights she may possess as a dependent of the decedent solely under and by virtue of his said contract, she, too, is in no position to challenge said contract as depriving her of the asserted constitutional right. In *Warren* v. *Indiana Telephone Co.* (1940), 217 Ind. 93, 26 N. E. 2d 399, 403, the Supreme Court, in dealing with the question of whether the Workmen's Compensation Act abrogated the constitutional right of trial by jury said:

> "We think not. In the first place, the rights and duties provided for in the Compensation Act are contractual in character, that is to say, they arise out of the voluntary acceptance of the terms thereof on the part of the employer and the employee. . . . Having elected to be bound by the act, *a party is in no position to complain* that his right to a jury trial is no longer available to him." (Our emphasis.)

See, also, *Sollitt Construction Co.* v. *Walker, supra.*

The common-law relationship, bearing the imprint of meretricious inception, most certainly constitutes a matter of public morals and concern subject to reasonable legislative control in behalf of the public welfare. In fact, all marriage relationship is of such vital concern to society, the public, and the State as to be subject to legislative regulation and control. *Pry* v. *Pry* (1947), 225 Ind. 458, 75 N. E. 2d 909; *Maynard* v. *Hill* (1888), 125 U. S. 190, 205, 31 L. Ed. 654, 657, 8 S. Ct. 723; *Noel* v. *Ewing* (1857), 9 Ind. 37, 50; *Sweigart* v. *State* (1938), 213 Ind. 157, 12 N. E. 2d 134, 114 A. L. R. 1117; *Wiley* v. *Wiley* (1921), 75 Ind. App. 456, 123 N. E. 252. In providing in the Compensation Act, as one of the terms of the contract between the employer and employee, that the favorite position of a presumptive dependent should be confined, in the case of a common-law marriage, to a wife who had sustained such relationship openly and notoriously for five (5) years immediately preceding the death of her employee husband, the Legislature did not, in our opinion, act unreasonably or arbitrarily. It treated alike all widows claiming a common-law marriage relationship to a deceased employee. We think that the Legislature, in determining the matter of dependency under the Compensation Act, could and did validly prescribe the measure and qualification for one claiming as a presumptive dependent widow upon the basis of common-law relationship. Although, as of the date of decedent's death, both the common-law marriage and the ceremonial or statutory marriage were recognized and entailed the same legal results, yet there remained with the common-law relationship not only the difficulty of original establishment, usually predicated upon indefinite and contradictory word of mouth, shorn of all signed documentary proof, but, also, the seed of distrust in

its genuineness and sincerity, germinated, no doubt, by the unwillingness or neglect of those asserting the marriage to follow the conventional and time-proven process of establishing by written public record the fact of marriage and the undertaking of the obligations thereof. In *Anderson* v. *Anderson* (1956), 235 Ind. 113, 120, 131 N. E. 2d 301, it was said, by adoption, that common-law marriages are recognized in Indiana, but since they are a fruitful source of perjury and fraud, they are merely tolerated and not encouraged. These considerations, among others, provide ample reasons for the validity of the legislative exclusion, in the Compensation Act, of the presumptive dependency of a common-law wife with less than five years of open and notorious common-law wife relationship next preceding the employee's death.

In the course of the hearings on appellant's claim, she introduced in evidence her Exhibit "A" which, according to her brief, was "a certified copy of a judgment of the Probate Court of Mercer County, Ohio, decreeing that:

'the plaintiff, Goldie M. Stoner, was married to David F. Stoner and that the said Goldie M. Stoner was the wife of David F. Stoner on February 9, 1951, and is now his widow and surviving spouse.'

Appellant contends that under the full faith and credit provision in the United States Constitution, Article 4, §1, said decree of the Ohio Probate Court must be recognized as establishing the marital status of appellant and decedent at the time of the latter's death and, consequently, that she, as his widow, was his presumptive dependent. Said decree, however, must be considered in the light of appellant's testimony and her stipulation in this action that on March 19, 1946, she "and said decedent contracted a common-law marriage which continued until decedent's death February

9, 1951." This action, in all three hearings, as exhibited by the record, proceeded on the theory that appellant's asserted marriage to decedent was one of common-law union only, and there appears no claim in any form by appellant of a statutory or ceremonial marriage to the decedent. Under such circumstances it cannot be presumed, as a basis for overthrowing the appealed from award of the Board, that the Ohio decree was predicated on a finding of a marriage other than a common-law marriage.

The extension of full faith and credit to the Ohio decree does not lend it the effect of transforming the asserted marriage, acknowledged and admitted by appellant to be that only of common-law, to that of a statutory or ceremonial marriage. The Ohio decree itself does not characterize the nature, kind, or form of the marriage referred to therein. Appellant's own evidence must be accepted as explanatory of the factual basis of the Ohio decree and it must, therefore, follow that said decree establishes no more than the same fact with relation to appellant's marriage as was found by the Board, namely: that she was the common-law wife of decedent at the time of his death.

The final contention of appellant is that the evidence "clearly showed" that she was "living with David F. Stoner and was totally dependent upon him" and entitled to recover under the provisions of §40-1403b of the Compensation Act. Appellee vigorously contests this contention upon the ground that appellant was not related to decedent "by blood or marriage" as required by said §40-1403b of said Act. Appellee says that it is unquestioned that appellant was not related to decedent "by blood," and that she could not be related to him "by marriage" because a "husband and wife are not related; they are considered in the law as one person." The proposition advanced by appellee would no doubt

provide a very captivating and fascinating subject for the paths of legal lore, but, at the moment, it appears more essential to devote our attention to the validity of the Board's finding that appellant "was not a dependent of said decedent at the time of . . .. his death."

In our first opinion in *Stoner* v. *Howard Sober, Inc.*, *supra*, (124 Ind. App. 581, 118 N. E. 2d 504), it was said that it was stated in *Willan* v. *Spring Hill Coal Corp.* (1948), 118 Ind. App. 422, 423, 424, 78 N. E. 2d 880, that although appellant may not have been entitled to compensation as a person presumed to be wholly dependent upon decedent, "she *may* have been entitled to compensation as a person related to the deceased employee by marriage." In our second opinion (141 N. E. 2d 458) we adhered to said declaration made in the first opinion. However disconcerting and inadvisable such holding may have been, it now constitutes the law of this case as the Supreme Court denied transfer of said second opinion (141 N. E. 2d 458). For the purpose of review of the question of dependency, we take appellant's condensed recital of the evidence as set forth in her brief:

"Goldie M. Stoner Rinker then testified that she was formerly Goldie Stoner, having been married to David Stoner; that she married Emory Rinker on July 29, 1955. She then stated that she was living with David Stoner in Mercer County, Ohio, in 1949, that she was employed part-time as a waitress and cook and her total earnings for the year were $285.00; that she lived with Stoner in 1950 and her total earnings that year were $362.50; that she lived with Stoner in 1951 and her total earnings were $73.30. She then testified that she was ill much of the time, and in the hospital many times and that Stoner paid the hospital and medical bills; that the household bills during those years other than paid by her earnings were paid by Stoner and that she was living with him when he went on the trip in 1951. She also testi-

fied that she worked in 1946 prior to her marriage to Stoner, but did not work that year after her marriage and was not employed in 1947 and 1948. She stated Stoner farmed and occasionally had outside work and that they pooled their money to keep the household and farm going."

A determination of a question of fact by the Industrial Board is conclusive if it is supported by any substantial evidence including reasonable inferences that may be drawn therefrom. Where the facts are uncontroverted and only one inference can be drawn therefrom, the question of dependency becomes one of law for the reviewing court. *Russell* v. *Johnson* (1943), 220 Ind. 649, 660, 46 N. E. 2d 219. It does not appear in this case that the evidence, though uncontradicted, affords only one inference.

If the Board had found that appellant was a dependent in fact upon the decedent, we, no doubt, would be forced to say that said evidence was sufficient to support such finding. However, the Board found that appellant was not a dependent of decedent at the time of his death and it is urged that said evidence forces a finding favorable to appellant on the dependency issue. The burden was on the appellant to prove that she was a dependent of the deceased at the time of his death, *Haskell, etc. Car. Co.* v. *Brown* (1918), 67 Ind. App. 178, 181, 182, 117 N. E. 555, and her evidence must comport with the same standards, definitive principles, and legal requirements and undergo the same legal tests as that of any claimant of dependency in fact.

The evidence must show that appellant looked to decedent for support and maintenance and that she depended and relied upon him for her reasonable necessities of life. As a rule, it is essential that the evidence also show that decedent made contributions to her support. *Rhoden et al.* v. *Smith, etc.*

*Elec Co.* (1939), 107 Ind. App. 152, 162, 163, 23 N. E. 2d 306; *Russell* v. *Johnson* (1943), 220 Ind. 649, 46 N. E. 2d 219; *Parke Co. R. Elect. Memb. Corp.* v. *Goodin* (1942), 112 Ind. App. 216, 44 N. E. 2d 198; *In re Carroll* (1917), 65 Ind. App. 146, 116 N. E. 844. The evidence does not establish, either directly or by compellable inference, that appellant looked to decedent for her support or that she depended and relied upon him for her necessities. It shows that in 1949 and 1950 the household bills "other than paid by her earnings" were paid by decedent but what such household bills consisted of, the amount thereof, or the kind and duration of the household are not disclosed by the evidence. Other than the payment by decedent of some hospital bills and whatever he may have paid toward the "household bills," there is no evidence of any contributions by decedent to appellant's support. The evidence does not establish that appellant had no source of income other than her stated earnings. The award being adverse on the issue of which appellant held the burden, no favorable inference can be drawn from the evidence that her stated earnings were her only source of income. If she had none such, the duty was hers to establish it by the evidence. Appellant said that she lived with decedent in 1951, that she was living with him "when he went on the trip in 1951" and that her total earnings for 1951 were $73.30, but such evidence falls far short of establishing, as against an adverse finding, that she was dependent upon decedent, within the standards and legal principles determinative thereof, at the time of his death on February 9, 1951. It is manifest, without further exploration, that said evidence is not of such character, nature, and force as to warrant only one conclusion and that contrary to the one reached by the Board.

Award affirmed.

Royse, P. J., concurs in result.

NOTE.—Reported in 149 N. E. 2d 121.