**Prentice E. SCOTT, Plaintiff-Appellant,**

v.

**UNION TANK CAR CO.,
Defendant-Appellee.**

**No. 3–877A203.**

Court of Appeals of Indiana,
Third District.

April 1, 1980.

Thomas J. Scully, Munster, for plaintiff-appellant.

G. Edward McHie, McHie, Enslen & Moran, Hammond, Joel H. Kaplan, Robert B. Watson, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for defendant-appellee.

HOFFMAN, Judge.

Prentice Scott was an employee at will of Union Tank Car Company for a period of

approximately five years ending on August 26, 1974, the date of Scott's dismissal. On October 6, 1976, over two years later, Scott filed suit against Union, alleging that he had been discharged in retaliation for filing a Workmen's Compensation claim. However, Union's motion to dismiss the suit on the ground that it was barred by the statute of limitations (IC 1971, 34–1–2–2 (Burns Code Ed.)) was granted by the court below.

Scott argues on appeal that his claim sounded in contract, not in tort, and that the six-year statute of limitations (IC 1971, 34–1–2–1 (Burns Code Ed.)) was therefore applicable. He maintains that the court erred in concluding otherwise because his claim arose out of a contractual relationship, i. e., the relationship created by his unwritten contract of employment.

In *Frampton v. Central Ind. Gas Co.* (1973), 260 Ind. 249, 297 N.E.2d 425, the Supreme Court held that an employee who alleges that he or she was discharged in retaliation for filing a claim pursuant to the Workmen's Compensation Act[1] or the Workmen's Occupational Diseases Act[2] has stated a claim upon which relief can be granted. Plainly, that decision recognized that an employee who files such a claim has an interest in continuing in his or her employment which is protected from invasion by the employer's retaliatory actions. It follows that the act of an employer who discharges such an employee is one "which is intended to cause an invasion of an interest legally protected from intentional invasion," and is, therefore, a tortious act. *Restatement of the Law, Torts 2d*, § 6, Comment a. The fact that the right invaded is one which the law has created "in consequence of a relation which a contract has established between the parties" in no way undermines, but in fact supports, that conclusion. *See: Peru Heating Co. v. Lenhart* (1911), 48 Ind.App. 319, at 326, 95 N.E. 680, at 683.

Consequently, the trial court correctly denominated Scott's claim as one sounding in tort and properly applied IC 1971, 34–1–2–2 (Burns Code Ed.) in dismissing the complaint.

Accordingly, the judgment below must be affirmed.

Affirmed.

GARRARD, P. J., concurs.

STATON, J., dissents with opinion.

STATON, Judge, dissenting.

I dissent to the rationale and conclusion of the Majority Opinion. The underpinning of the Majority's conclusion is that the employer's discharge of Scott was an act "which is intended to cause an invasion of an interest legally protected from invasion." If this rationale were to be extended to every intentional act which resulted in a breach of contract, a tort action would be created in addition to the breach of contract action. If the facts surrounding the act do not exactly fit the contract theory, regardless of the fundamental relationship, then, an action in tort could be considered.[1]

Even if more compelling rationale could be presented by the Majority to show that Scott's action could be based upon a tort theory, I would still dissent. Scott's action can be better characterized as a contract action than a tort action. This is important where an action may not survive because of the statute of limitations if one theory rather than another is applied to its facts. As a matter of policy, the Courts of Indiana as well as those of many other states[2] have always applied the theoretical construction which would permit the cause of action to survive the statute of limitations. *Holt Ice, etc., Co. v. Arthur Jordan Co.* (1900), 25

---

1. IC 1971, 22–3–2–1 *et seq.* (Burns Code Ed.).

2. IC 1971, 22–3–7–1 *et seq.* (Burns Code Ed.).

1. The Majority's approach calls to mind Dean Prosser's denunciation of the use of tort law as a "legal garbage-can" into which wrongs which do not fit neatly into defined categories are thrown. W. Prosser, *Law of Torts* § 1, p. 2 (4th Ed. 1971).

2. *Payne v. Ostrus* (1931), 50 F.2d 1039, 1042; *O'Malley v. Sims* (1938), 51 Ariz. 155, 75 P.2d 50, 54; *Jefferson v. Nero* (1955), 225 Ark. 302, 280 S.W.2d 884, 886.

Ind.App. 314, 57 N.E. 575; *Raugh v. Stevens* (1899), 21 Ind.App. 650, 52 N.E. 997; *See* 1 I.L.E. § 25 p. 95 (1957).

Assuming *arguendo* that Scott's action could be based upon a tort theory as well as a contract theory, the contract theory would give Scott more time in which to file his action under the statute of limitations. *Holt* and *Raugh* would permit Scott's action to withstand the terminal threat of the statute of limitations. Scott would have six years instead of two years to bring his action. The trial court erred when it dismissed Scott's action. I would reverse.

The trial court erred when it granted Union Tank Car Company's Motion to Dismiss which was predicated upon the statute of limitations. Scott maintains that an employee's action to recover damages for an employer's retaliatory discharge can be based on contract theory. Accordingly, Scott argues that the six year statute of limitations which governs "contracts not in writing" (IC 1971, 34–1–2–1, Ind.Ann.Stat. § 2–601[3] (Burns Code Ed.)) renders the trial court's dismissal of his action erroneous.

Traditionally, American common law has characterized contracts of employment for unspecified periods of time as "employment contracts at will."[4] 53 Am.Jur.2d *Master and Servant* § 43 (1970). As the label implies, an employment relationship for an unspecified period of time has generally been regarded as terminable at the will of either the employer or employee, with or without cause. *Id.*

The application of this rule of law has sometimes led to extraordinary, harsh results. For example, in *Mallard v. Boring* (1960), 182 Cal.App.2d 390, 6 Cal.Rptr. 171,

a secretary was discharged after she refused to comply with her superior's directive to indicate on a jury service questionnaire that she was not available. Despite the fact that she had consulted with a senior partner who had advised her that jury service was a duty and that she should indicate her availability, the California Court of Appeals upheld the dismissal of her cause, at the same time noting that the employer's actions were "reprehensible" and "selfish and shortsighted." *Id.* at 174. Similar results have been reached in other jurisdictions which invoke a strict application of the rule that an employee whose work contract is for an unspecified period of time may be discharged at the employer's whim. *See, e. g., Simmons v. Westinghouse Electric Corp.* (1975), 311 So.2d 28 (La.App.) (No cause of action for foreman with twenty-five years seniority who was allegedly discharged as a result of plant manager's false report that foreman was sympathetic to union organizers, despite allegations that company had orally promised that he would not be fired except for just cause.); *Geary v. United States Steel Corp.*, (1974), 456 Pa. 171, 319 A.2d 174 (Roberts, J. dissenting) (Dismissal of salesman's wrongful discharge suit on allegations that his complaint to superiors concerning inadequate laboratory testing regarding safety of new product motivated the termination of his employment of fourteen years, despite companion allegation that his complaint had resulted in withdrawal of product from market.).

While Indiana has traditionally adhered to the rule that an employment agreement for an unspecified period of time is terminable at the will of either party, it has recently joined with a distinct minority of this nation's jurisdictions[5] in recognizing that

---

**3.** I note at the outset that subsequent to August 29, 1977, a two year statute of limitations is applicable to all suits arising from an unwritten employment agreement. IC 1971, 34–1–2–1.5 (Burns Code Ed. Supp. 1979). *See* text, *infra.*

**4.** In this respect, the American common law departed from the British tradition. In England, an employment contract for an indefinite period was presumed to amount to a contract for one year. Continuation of the employment beyond the first year made the contract deter-

minable only at the end of an additional year. Note, *Implied Contract Rights to Job Security*, 26 Stan.L.Rev. 335 (1973–74).

**5.** Perhaps the lead decision recognizing that there are limitations to an employer's right to discharge an employee hired for an unspecified period of time is *Monge v. Beebe Rubber Company* (1974), 114 N.H. 130, 316 A.2d 549. *See also* 62 A.L.R.3d 264 (1975), and cases collected therein. The subject has also received extensive treatment from commentators. *See, e. g.,*

the inflexible application of the "employment at will" doctrine simply is not always consonant with the ends of justice. In *Frampton v. Central Indiana Gas Company* (1973), 260 Ind. 249, 297 N.E.2d 425, the Supreme Court confronted the question whether an employee who alleged that she was fired in retaliation for filing a workmen's compensation claim had stated a cause of action. Writing for the majority, Justice Hunter said:

> "In summary, we hold that an employee who alleges he or she was retaliatorily discharged for filing a claim pursuant to the Indiana Workmen's Compensation Act (IC 1971, 22–3–2–1 et seq. (Ind.Ann. Stat. § 40–1201 et seq. [1965 Repl.])) or the Indiana Workmen's Occupational Diseases Act (IC 1971, 22–3–7–1 et seq. (Ind. Ann.Stat. § 40–2201 et seq. [1965 Repl.])) has stated a claim upon which relief can be granted.

> "We further hold that such a discharge would constitute an intentional, wrongful act on the part of the employer for which the injured employee is entitled to be fully compensated in damages. Of course, the issue of retaliation should be a question for the trier of fact.

> "We agree with the Court of Appeals that, under ordinary circumstances, an employer at will may be discharged without cause. However, when an employee is discharged solely for exercising a statutorily conferred right an exception to the general rule must be recognized."

260 Ind. at 253, 297 N.E.2d at 428. As in *Frampton*, Scott's complaint in the case at bar alleges a retaliatory discharge of that type which Indiana recognizes as actionable at law, notwithstanding the fact that Scott's employment agreement was one generally characterized as terminable at will.

*Frampton* does not establish whether employees who are exercising a statutory right may base their claims on a contract theory. In order to determine that question, our analysis turns to the consideration of the *nature of the rights and obligations* of employers and employees under the Workmen's Compensation Act.

As originally enacted in 1929, the rights and obligations of the Workmen's Compensation Act were not compulsory in nature. IC 1971, 22–3–2–2, Ind.Ann.Stat. § 40–1202 (Burns Code Ed.) provided that employers and employees were "presumed to have accepted" the rights and obligations of the Act, but it allowed either party to repudiate the applicability of the Act by obtaining authorization of the Industrial Board and notifying the other party of the intent to abrogate the Act's provisions. The Workmen's Compensation Act was thus presumed by statute to control the rights and obligations of parties to employment relationships so long as neither employer or employee had exercised the concomitant statutory option to negate the Act's applicability.

The optional aspect of this statutory scheme provided the foundation for the development of the well-established rule that the rights and obligations provided in Indiana Workmen's Compensation Act were "contractual in nature." *See, e. g., Warren v. Indiana Telephone Co.* (1940), 217 Ind. 93, 102, 26 N.E.2d 399, 403; *Stoner v. Howard Sober, Inc.* (1958), 128 Ind.App. 371, 373, 149 N.E.2d 121, 123; *Calkins v. Service Spring Co.* (1937). 103 Ind.App. 257, 262, 7 N.E.2d 54, 56. This conclusion that workmen's compensation provisions became part of the employment contract was based on the rationale that the employer and employee who chose not to exercise their statutory option had *voluntarily accepted* the terms of the Act. *Id.*

In 1974, the legislature repealed the option which it had granted employers and employees in favor of a provision which imposed the rights and obligations of workmen's compensation law on all employment relationships which fall within the purview of the Workmen's Compensation Act. Act

---

Blades, *Employment at Will vs. Individual Freedom: On Limiting the Abusive Exercise of Employer Power*, 67 Columbia L.Rev. 1404 (1967);

Note, *A Common Law Action for the Abusively Discharged Employee*, 26 Hast.L.Rev. 1435 (1975).

of 1974, Pub.L. No. 108, § 2, p. 393. The amended version of IC 22–3–2–2, *supra*, now reads in relevant part:

> "From and after the taking effect of this law [May 21, 1929], namely IC 1971, 22–3–2 through 22–3–6[22–3–2–1—22–3–6–3], every employer and every employee, except as herein stated, shall be required to comply with the provisions of this law, respectively to pay and accept compensation for personal injury or death by accident arising out of and in the course of the employment, and shall be bound thereby  .  .  .."

IC 1971, 22–3–2–2 (Burns Code Ed., Supp. 1978). Obviously, the compulsory nature of workmen's compensation laws subsequent to the 1974 amendment subverts the rationale of pre-1974 decisions which characterized the rights and obligations as "contractual in nature." Employers and employees no longer are provided the opportunity to choose whether their employment relationship will be governed by workmen's compensation provisions. Rather, the legislature has imposed the rights and obligations of the Act upon all employment relationships within its scope, regardless of the particular desires of the parties to that relationship. Consequently, those decisions made prior to the effective date (July 1, 1974) of the 1974 amendment are not relevant. A search of Indiana case law subsequent to 1974 has not revealed an analysis by any appellate tribunal of the nature of the rights and obligations which the General Assembly has imposed on the employment relationships through workmen's compensation legislation.

Indiana Workmen's Compensation Act was an Act passed pursuant to the legislature's broad general powers to pass all laws and regulations necessary to the peace, safety, health, happiness, and general welfare of the people of the State. Ind.Const. art. 4, § 1; *Central Union Tel. Co. v. Indianapolis* (1920), 189 Ind. 210, 219, 126 N.E. 628, 633. The General Assembly's power to regulate contracts and employment is partially restricted by the due process clause of the United States Constitution. U.S.Const. amend. XIV, § 1. Jurisdictionally, a state has no power to restrict or control the obligations of contracts executed or performed wholly outside its borders. *Alaska Packers Assn. v. Comm'n* (1934), 294 U.S. 532, 540, 55 S.Ct. 518, 79 L.Ed.1044; *Calkins v. Service Spring Co.* (1937), 103 Ind.App. 257, 262–265, 7 N.E.2d 54, 56–57. Nor can a state regulate a contract performed outside its borders when only one of the contracting parties is within the state. *Alaska Packers Assn. v. Comm'n, supra.* However, a state may restrict and control to some extent contracts which are entered within the state, even though the contract may be performed in part outside its borders. *Id.; accord, Shelby Mfg. Co. v. Harris* (1942), 112 Ind.App. 627, 636, 44 N.E.2d 315, 319.

A similar power of a state to control the legal consequences of a tortious act committed outside the state has been denied. *Western Union Telegraph Co. v. Brown* (1914), 234 U.S. 542, 547, 34 S.Ct. 955, 956, 58 L.Ed. 1457. It necessarily follows that if the rights and obligations imposed on employment agreements by the Workmen's Compensation Act are applicable to injuries sustained by an employee in another jurisdiction, then those rights and obligations must be contractual in nature. *Alaska Packers Assn. v. Comm'n supra; Post v. Burger and Gohlke* (1916), 216 N.Y. 544, 111 N.E. 351, 354.

This conclusion is also compelled by the fact that the liability imposed upon employers for their employees' work-related injuries is not based on tort theories. To determine the validity of an injured employee's claim for compensation, the Industrial Board does not base its decision on whether it finds that the employer was negligent or at fault, but rather examines the circumstances surrounding the injury to see if it was sustained as the result of an "accident arising out of and in the course of the employment." IC 1971, 22–3–2–2 (Burns Code Ed., 1978 Supp.). Thus, the employer obligation to compensate injured employees is one which is incident to the employment relationship. It is a duty which the Workmen's Compensation statutes read into every employment contract; accordingly, it is

a duty which is contractual in nature. *Alaska Packers Assn. v. Comm'n, supra,* 294 U.S. at 541, 55 S.Ct. at 521; *Industrial Comm. v. Nordenholt Co.* (1922), 259 U.S. 263, 271, 42 S.Ct. 473, 66 L.Ed. 406; *Sneeden v. Industrial Comm.* (1937), 366 Ill. 552, 10 N.E.2d 327, 330; *Lunderberg v. Beirman* (1954), 241 Minn. 349, 63 N.W.2d 355, 365; *Post v. Burger and Gohlke, supra,* at 354.

I also note that the statutory workmen's compensation scheme wherein rights and obligations are imposed on employers and employees is imbued with rudiments of contract law. The contractual element of consideration is inherent in the Act's abrogation of both the employer's common law defenses and the employee's common law remedy. In addition, mutuality of obligation pervades the statutory scheme. For example, the employer is required to pay benefits to the injured employee at the time(s) and in the amount(s) provided by statute, so long as the employee satisfied his or her obligation to file the claim within the statutory period.

Finally, it can be assumed that by virtue of the legislature's passage of the Workmen's Compensation Act, the parties enter their contractual relationship with the mutual understanding and expectation that their relationship will be governed by the Act's provisions. *See generally, Hibler v. Globe American Corporation* (1958), 128 Ind.App. 156, 160–162, 147 N.E.2d 19, 21–22.

Assuming *arguendo* that Scott's action could be based upon a tort theory as well as a contract theory, dismissal of the action would not be justified. When the Courts of this State have been confronted with the question of whether an action lies in contract or tort, the Courts have adopted the theory which would permit the action to be heard on the merits. *Holt Ice, etc., Co. v. Arthur Jordan Co.* (1900), 25 Ind.App. 314, 57 N.E. 575; *Raugh v. Stevens* (1899), 21 Ind.App. 650, 52 N.E. 997; *See* I.L.E. *Action* § 25, p. 95 (1957).

Other jurisdictions, with apparent unanimity, agree that when a question arises with respect to which of two applicable statutes of limitations should govern a particular cause of action, the doubt should be resolved in favor of the theory containing the longer period of limitation. *Payne v. Ostrus* (1931), 50 F.2d 1039, 1042; *O'Malley v. Sims* (1938), 51 Ariz. 155, 75 P.2d 50, 54; *Jefferson v. Nero* (1955), 225 Ark. 302, 280 S.W.2d 884, 886.

Here, the longer period of limitations is the six year time frame applicable to actions based on "contracts not in writing." IC 1971, 34–1–2–1, *supra.* The application of that limitation period sustains Scott's action and is consistent with the policy of the Courts of this State. *Holt Ice, etc., Co. v. Arthur Jordan Co., supra; Raugh v. Stevens, supra.*

Perhaps, whether a contract theory or a tort theory may provide a basis for a *Frampton* type cause of action was recognized by our legislature when, after the Court's decision in *Frampton v. Central Indiana Gas Co.,* it enacted IC 1971, 34–1–2–1.5 (Burns Code Ed., Supp.1979). The statute reads:

> "Employment agreements not in writing.—All actions relating to the terms, conditions, and privileges of employment except actions based upon a written contract (including, but not limited to, hiring or the failure to hire, suspension, discharge, discipline, promotion, demotion, retirement, wages, or salary) shall be brought within two [2] years of the date of the act or omission complained of."

After August 29, 1977, the effective date of the statute, actions, such as the one Scott has presented here, will be subject to the two year limitations period. Scott's action, however, accrued approximately five years prior to the effective date of the statute.

The trial court erred when it granted Union Tank Car Company's Motion to Dismiss which was based on the theory that Scott's cause of action was barred by the statutes of limitation. I would reverse the judgment of the trial court with instructions to vacate its judgment and to overrule the Motion to Dismiss filed by Union Tank Car Company.